**James D. HARDIN, Appellant,**

v.

**Charlotte L. HARDIN, Appellee.**

No. 14–03–00342–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 2004.

Rehearing Overruled Jan. 27, 2005.

James D. Hardin, Houston, pro se.

Charlotte L. Hardin, Katy, pro se.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In eleven issues, appellant, James D. Hardin ("James"), challenges the trial court's order denying his petition to modify child support. The appellee, his former wife, Charlotte L. Hardin ("Charlotte"), did not file a brief.[1] Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James and Charlotte entered into an Agreed Final Decree of Divorce (the "Decree") which was signed by the court on October 3, 2001. Per their agreement, Charlotte and James were appointed joint managing conservators of their minor child and James was ordered to pay $800 per month in child support.[2]

On November 29, 2001, less than two months after the Decree was approved and entered by the court, James filed a petition to modify the parent-child relationship.[3] On November 11, 2002, at the conclusion of a bench trial, the court orally denied the requested modification of child support and awarded Charlotte attorney's fees.

On November 22, 2002, the trial court signed its final judgment. Thereafter, James filed a request for findings of fact and conclusions of law on December 3, 2002, and a notice of past due findings of fact and conclusions of law on January 8, 2003. The trial court did not file the requested findings. This appeal ensued.

## II. ISSUES PRESENTED

On appeal, James argues the trial court abused its discretion by (1) not filing child support findings under section 154.130 of the Family Code and under Texas Rules of Civil Procedure 296 and 297; (2) refusing to modify the amount of child support ordered in the Decree; (3) awarding attorney's fees without pleading, notice, evidence, or hearing; (4) awarding attorney's fees without regard to section "156.123" of the Family Code; (5) awarding attorney's fees without a specific finding under section 156.005 of the Family Code; (6) awarding attorney's fees as child support; (7) admitting inadmissible hearsay; and (8) allowing his attorney to withdraw. James also contends the trial court erred by (1) failing to give him notice of the November 22, 2002 order denying the requested modification of child support; (2) permitting an assistant attorney general to participate in the case; and (3) breaching Canon 3(B)(8) of the Code of Judicial Conduct.

## III. STANDARD OF REVIEW

█ Generally, unless the complaining party can demonstrate a clear abuse of

---

1. Both parties retained counsel in the lower court, but are *pro se* on appeal.

2. The Decree required all child support payments to be paid through the Child Support Division of the Harris County District Clerk's office. An order for withholding from earnings was also signed by the court.

3. Initially, James sought to modify child support and the terms of possession and access because he had moved to Dallas. However, at trial, his attorney represented to the court that James had abandoned all relief except the reduction of child support.

discretion, orders arising from a suit affecting the parent-child relationship will not be disturbed on appeal. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *In re D.S.*, 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding rules or principles. *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex.App.-Houston [1st Dist.] 1999, no pet.). In determining whether an abuse of discretion has occurred, we view the evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied). When a court fails to analyze or apply the law correctly, it abuses its discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). An allegation of legal or factual insufficiency is not treated as an independent ground of error in this context because the appropriate standard of review is abuse of discretion. *In re D.S.*, 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

## IV. *ANALYSIS*

We address James's second and third issues first because our disposition of those issues impacts our analysis of James's first and eighth issues, which we address together. For clarity, we next address James's fourth issue relating to notice of the trial court's judgment and then his remaining issues.

### A. Did the trial court abuse its discretion in failing to file child-support findings?

#### 1. Findings Under Family Code Section 154.130

■ In his second and third issues, James argues the trial court abused its discretion because it did not make required findings under section 154.130 of the Family Code.[4] Findings by the trial court under section 154.130 of the Family Code are required only when the amount of child support ordered or rendered by the court varies from the guidelines. TEX. FAM. CODE ANN. § 154.130(a)(3) (Vernon 2002); *In re D.S.*, 76 S.W.3d at 522. Here, the court simply denied James's request to modify the support obligation set out in the Decree; it did not issue or render a new child-support order.[5] Therefore, no findings were required and the trial court did not abuse its discretion in failing to make findings under section 154.130. *See In re D.S.*, 76 S.W.3d at 522; *Terry v. Terry*, 920 S.W.2d 423, 425-26 (Tex.App.-Houston [1st Dist.] 1996, no

---

**4.** This section, entitled "Findings in Child Support Order" states:

Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support, the court shall make the findings required by Subsection (b) if:

(1) a party files a written request with the court not later than 10 days after the date of the hearing;

(2) a party makes an oral request in open court during the hearing; or

(3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines.

TEX. FAM. CODE ANN. § 154.130(a)(1)B(3).

**5.** James cites to this court's holding in *Omodele v. Adams*, No. 14–01–0999–CV, 2003 WL 133602, (Tex.App.-Houston [14th Dist.] 2003, no pet.) (not designated for publication) to support his contention that the trial court was required to make certain findings in this case. However, *Omodele* involved an appeal from an actual divorce proceeding where this court determined that the child support award granted by the trial court exceeded the child support guidelines established in the Family Code. *See* 2003 WL 133602, at *4.

writ) (holding because trial court did not set or modify the amount of child support, findings were not required even though requested).

### 2. Findings under Rules 296 and 297

■ James also contends the trial court should have filed findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 296 and 297. Rule 296 requires an initial request for findings to be filed within twenty days after a judgment is signed; Rule 297 requires the court to file its findings within twenty days of the initial request. TEX. R. CIV. P. 296, 297. If the court fails to timely file findings, the party requesting the findings must file a reminder request within thirty days of the date the original request was filed. TEX. R. CIV. P. 297.

Here, the trial court signed the final order on November 22, 2002. James filed a request for findings of fact and conclusions of law on December 3, 2002. James filed a notice of past due findings of facts and conclusions of law on January 8, 2003. Because the notice was filed more than thirty days after December 3, 2002, it was untimely. Therefore, his complaint that the court failed to issue its findings and conclusions is waived on appeal due to his failure to file the notice in a timely manner. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255 (Tex. 1984). Accordingly, we overrule appellant's second and third issues and proceed under the presumption that the trial court found all facts necessary to support its judgment. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1994, pet. denied) (noting that if there are no findings of fact or conclusions of law filed, all findings necessary to support the judgment, supported by the record, will be implied). However, we may review any implied findings for sufficiency of the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

### B. Did the trial court err by allegedly failing to give James notice of its judgment?

In his fourth issue, James asserts the trial court failed to give him notice of the November 22, 2002 order denying modification of child support until December 3, 2002, in violation of Texas Rule of Civil Procedure 306a(3). We find no evidence in the record to support James's claim. Nor do we find that this alleged error was brought to the trial court's attention. *See* Tex.R.App. P. 33.1(a). Therefore, we overrule James's fourth issue.

### C. Did the trial court abuse its discretion by refusing to modify James's child support obligation?

■ In his first issue, James contends the trial court erred in refusing to modify the amount of child support set forth in the Decree because the evidence showed he did not have sufficient net resources to justify that amount under the child support guidelines. In his eighth issue, James asserts he presented legally and factually sufficient evidence of a material and substantial change in circumstances, thereby warranting a decrease in child support. We disagree.

■ To prevail on a motion to modify support, the movant must show (1) that the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of: (a) the date of the order's rendition; or (b) the date the settlement agreement which the order is based on was signed; or (2) three years have elapsed since the order was rendered or last modified, and the child support award differs by either twenty percent or $100 from the amount that

would be awarded in accordance with the child support guidelines. *See* TEX. FAM. CODE ANN. § 156.401(a)(1)-(2) (Vernon Supp.2004). In determining whether a modification of support is necessary, the trial court should examine and compare the circumstances of the parents and any minor children at the time of the order, with the circumstances existing at the time modification is sought. *In re D.S.*, 76 S.W.3d at 520. On review, we allow the trial court broad discretion in setting child-support payments and in modifying those payments. *Id.*

██ When ruling on a requested modification, the trial court may consider, among other factors: (1) the needs of the child; (2) the ability of the parents to contribute to the child's support; (3) any financial resources available for support; and (4) the amount of possession of and access to the child. TEX. FAM. CODE ANN. § 154.123 (Vernon 2002). The parties should present evidence to the trial court of the parents' and/or the child's financial circumstances and needs, both at the time of divorce and at the time of the modification hearing. *See Farish v. Farish*, 921 S.W.2d 538, 541 (Tex.App.-Beaumont 1996, no writ).

James argues there has been a material and substantial change in circumstances since the time of the divorce because: (1) he changed jobs and had a decrease in compensation and then subsequently lost the lower-paying job as a result of a corporate reorganization; (2) he suffered extended unemployment and exhausted his unemployment compensation; and, more recently, (3) he was injured in an automobile accident. Just before his divorce, James earned $65,000 per year as a supervisor and estimator for SpawMaxwell. In November 2001, he moved to Dallas and started work at C.F. Jordan. After being terminated from C.F. Jordan in March 2002, he remained unemployed until the time of trial, approximately seven months later. His unemployment compensation benefits terminated in July 2002.

At trial there was conflicting testimony regarding James's employment just prior to signing the Decree, and the circumstances surrounding James's termination of employment with SpawMaxwell. Notably, by October 3, 2001, the date the Decree was signed, James had already tendered his letter of resignation to SpawMaxwell.[6] There was also conflicting evidence regarding James's job prospects in the Houston area at that time, and exactly when he was offered a job at C.F. Jordan and at what salary. James claimed he made less money at C.F. Jordan than he had expected because an employment recruiter misled him. However, Charlotte testified James took the lower-paying job purposefully, because he thought the future prospects were better at C.F. Jordan than at similar positions in Houston for the same salary.

James also testified he was unable to work due to an automobile accident on August 20, 2002. Although he testified he had not been released by his doctor to return to work, documents admitted at trial indicated that James's medical limitations as a result of the accident were twisting, bending, and lifting. Nothing in the record demonstrates that James's doctors forbade him from working between August 20, 2002, the time of the auto accident, and November 11, 2002, the date of the trial.[7]

---

6. A letter in the record indicates James resigned from SpawMaxwell and was given $3,000 in exchange for a release of all claims against the company, but James testified that

actually he was laid off as a consequence of the September 11th tragedy.

7. Although James was a skilled carpenter, he was no longer required to do heavy labor (i.e.,

In fact, James, who previously had worked construction-related jobs, testified he was using two employment recruiters and sought employment during that period of time. However, on cross-examination, he admitted he had not pursued any construction-related positions advertised in the Sunday *Houston Chronicle* during the three weeks prior to trial. In fact, although James testified that he was a highly skilled carpenter, his activities at the time of trial included hosting a weekly television show and participating in an internet show for which he received no remuneration for his services.

■■■■■ Balanced against the evidence of James's job loss and car accident, was Charlotte's testimony that James was intentionally unemployed. A child support obligor qualified to obtain gainful employment cannot avoid his support obligation by voluntarily remaining unemployed or underemployed. *Tenery v. Tenery,* 955 S.W.2d 337, 340 (Tex.App.-San Antonio 1997, no pet). To make a finding of intentional underemployment or unemployment, there must be evidence the parent reduced his income for the purpose of decreasing his child support payment. *In re P.J.H.,* 25 S.W.3d 402, 405 (Tex.App.-Fort Worth 2000, no pet.). The requisite intent, or lack thereof, to be underemployed or unemployed for the purpose of determining a child support award may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *In re Davis,* 30 S.W.3d 609, 617 (Tex.App.-Texarkana 2000, no pet.); *In re P.J.H.,* 25 S.W.3d at 405–06. At the same time, the court must keep in mind a par-

ent's right to pursue his or her own happiness. *DuBois v. DuBois,* 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.). Once the parent obligated to pay child support offers proof of his or her current wages, the other parent bears the burden to show that the obligor is intentionally underemployed or unemployed. *Id.* Because James testified that his lay-off from C.F. Jordan job was involuntary, whether he voluntarily remained unemployed since March 2002 was an issue at trial.

Charlotte testified she believed James was intentionally unemployed because he did not want to pay child support in the amount agreed to in the Decree. She stated that her problems with James began after she requested a child support wage withholding order when he worked in Dallas. According to Charlotte, James was vehemently opposed to any wage withholding. She believed James's retaliatory fervor to remain unemployed after he lost his job in Dallas accelerated in June 2002, when she asked the attorney general's office to enforce the child support order because he had stopped paying monthly, or paid less than the amount of child support due.[8]

Charlotte also testified that she believed James had unreported income, because he "always has side jobs." At trial, James admitted to doing some remodeling work while they were married and to not reporting that income. Prior to trial, Charlotte had observed James wearing work clothes and work boots when he picked up their child for visitation. She further testified she had seen construction plans in his vehicle. Additionally, a letter from James's attorney was admitted into evi-

---

sheetrock and ceiling tile labor) because he was a construction project manager.

**8.** Charlotte filed a request with the Texas attorney general's office to enforce the child

support order under Title IV–D. The attorney general filed an enforcement proceeding and it was scheduled for trial in May 2003.

dence stating that James was seeking employment "but the only job he has is working with his dad making $15.00 per hour." This letter was dated during the time period James claims he was unemployed and receiving unemployment compensation. In sum, Charlotte presented evidence supporting an implied finding of James's intentional unemployment.

Moreover, as the fact-finder, the trial court had the discretion to disbelieve James's testimony; the court was not required to accept James's evidence of his income and net resources as true. *See Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (trial court's grant of partial reduction in support was proper exercise of discretion in light of conflicting and unreliable evidence of movant's income); *In re Marriage of Bertram*, 981 S.W.2d 820, 825–26 (Tex.App.-Texarkana 1998, no pet.) (trial court's denial of joint managing conservatorship was proper exercise of discretion in light of conflicting evidence of best interests of the children). Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for the trial court's. *See, e.g., Norris v. Norris*, 56 S.W.3d 333, 343 (Tex.App.-El Paso 2001, no pet.). It is apparent by its ruling the trial court disbelieved James's testimony that he was actively seeking employment, had no income since March 2002 other than unemployment compensation, and was so debilitated by the automobile accident that he was unable to work.

In sum, it was not unreasonable for the trial court to find that James failed to meet his burden of proving a material and substantial change in circumstances, nor was it unreasonable for the trial court to

find that James was intentionally unemployed. Consequently, the court was entitled to look to his earning potential based on his work experience. In light of this, it was reasonable for the trial court to conclude James was able to pay child support as ordered in the Decree. Finding sufficient evidence, we conclude the trial court acted neither arbitrarily nor unreasonably in denying modification of the child support order. *See In re P.J.H.*, 25 S.W.3d at 405. Therefore, we overrule James's first and eighth issues.

**D. Did trial court abuse its discretion in awarding Charlotte attorney's fees?**

In his fifth, sixth, and seventh issues, James appeals the trial court's award of $2,250 in attorney's fees to Charlotte.

Specifically, in his fifth issue, James argues the trial court erred in awarding the attorney's fees without pleading, notice, evidence, or hearing, and without regard to section "156.123" of the Family Code.[9] Because there is nothing in the record to indicate James made this argument in the trial court, he has waived it for our review. *See* Tex.R.App. P. 33.1(a).

However, even assuming James had preserved his arguments regarding the lack of pleadings, we find them without merit. In Charlotte's "First Original Answer and Request for Disclosures," she specifically requested the court "deny the relief requested and grant ... her attorney's fees as costs and for such [other] and further relief to which [she] may show herself entitled." This pleading was sufficient to support an award of attorney's

---

**9.** Although James cites to "156.123" in the statement of his issue, there is no such section in the Family Code. We presume his issue is directed towards section 154.123.

fees. *See, e.g., Daniels v. Allen,* 811 S.W.2d 278, 280 (Tex.App.-Tyler 1991, no writ) (involving a judgment awarding one-half of attorney's fees as costs enforceable as child support, and holding that a prayer for general relief supports any relief raised by the evidence and pleadings consistent with allegations in the petition).

 We also conclude James's assertion regarding a lack of evidence to support the award of attorney's fees is also without merit.[10] In family law matters, the trial court has broad discretion in awarding attorney's fees, particularly in those matters involving the parent-child relationship. TEX. FAM. CODE ANN. § 106.002 (Vernon 2002); *Bruni v. Bruni,* 924 S.W.2d 366, 368 (Tex.1996). However, the award of attorney's fees must be supported by evidence. *Thomas v. Thomas,* 895 S.W.2d 895, 898 (Tex.App.-Waco 1995, no writ). To support a request for reasonable attorney's fees, testimony should be given regarding the hours spent on the case, the nature of preparation, complexity of the case, experience of the attorney, and the prevailing hourly rates. *Goudeau v. Marquez,* 830 S.W.2d 681, 683 (Tex.App.-Houston [1st Dist.] 1992, no writ). Sworn testimony from an attorney concerning an award of attorney's fees is considered expert testimony. *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 148 (Tex.App.-Houston [1st Dist.] 1986, no writ).

At trial, Charlotte testified she hired Mary Quinn as her lawyer and paid her a retainer of $2,500. Quinn also testified, stating that she was a licensed lawyer familiar with reasonable and necessary fees for this type of case, and that she had worked over 18 hours on the case through trial at $225 per hour. James's attorney cross-examined Quinn about the extent of her work, which resulted in a brief summation of documents she reviewed and other actions taken in the case. This evidence is sufficient to support the award of attorney's fees. We hold that the trial court did not abuse its discretion in awarding $2,250 in attorney's fees to Charlotte. *See In re G.J.S.,* 940 S.W.2d 289, 295 (Tex. App.-San Antonio 1997, no writ); *MacCallum v. MacCallum,* 801 S.W.2d 579, 587 (Tex.App.-Corpus Christi 1990, writ denied).

 In his sixth issue, James argues the trial court erred by awarding attorney's fees without a specific finding under section 156.005 of the Family Code. However, James fails to make any argument or cite to any authority in his brief in connection with the issue. Therefore, James has waived the issue on appeal. *See* Tex. R.App. P. 38.1(h); *Sterling v. Alexander,* 99 S.W.3d 793, 798–99 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Accordingly, James's sixth issue is overruled.

 In his seventh issue, James argues that the award of attorney's fees as child support constitutes error.[11] We re-

---

10. As noted, James's additional assertions in his fifth issue regarding notice, hearing and section 156.123, were inadequately briefed and therefore, waived on appeal. *See* TEX. R. APP. P. 38.1(h).

11. Specifically, James lists his seventh issue as, "The trial court erred by awarding attorney's fees without sufficient evidence to support the amount of the award and without a specific finding that the attorney's fees were 1) in fact paid by Appellee, and 2) were di-

verted from the benefit of the child." We previously have addressed the evidence in support of the award. In addition, James fails to provide any argument or authority for his claims that specific findings were necessary regarding whether the fees were in fact paid by Charlotte and whether the money was diverted from the benefit of the child. Based upon the argument and authority provided by James, we construe his argument to be that as we have set forth above.

view an award of attorney's fees in the nature of child support for an abuse of discretion. *See, e.g., In re A.J.L.,* 108 S.W.3d 414, 421 (Tex.App.-Fort Worth 2003, pet. denied) (holding trial court abused its discretion in awarding attorney's fees in the nature of child support against a non-parent who was not obligated to pay child support).

 Attorney's fees rendered in a suit affecting the parent-child relationship may be awarded as "necessaries" to the children. *London v. London,* 94 S.W.3d 139, 146 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing to *Roosth v. Roosth,* 889 S.W.2d 445, 456 (Tex.App.-Houston [14th Dist.] 1994, writ denied)); *see In re A.J.L.,* 108 S.W.3d at 422 (noting that an order to pay attorney's fees as child support is interpreted as an order to pay attorney's fees as "necessaries" for the benefit of the child). An award of fees in this manner is based on the principle that parents have a legal duty to support their children and, as such, the award is not a "debt" within the prohibition of Article I, Section 18 of the Texas Constitution. TEX. CONST. Art. I, § 18 ("No person shall ever be imprisoned for debt."); *see* TEX. FAM. CODE ANN. § 154.001 (Vernon 2002); *London,* 94 S.W.3d at 146; *Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993). Thus, if the services performed by the attorney have a relationship to the needs of the child, they may be construed as "necessaries." *See Roosth v. Roosth,* 889 S.W.2d 445, 456 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

In this case, after reviewing the evidence, we cannot say that the services performed by Charlotte's attorney had no relationship to the needs of the child.[12] *See Roosth,* 889 S.W.2d at 456. We begin by noting that by virtue of the proceeding, James was attempting to have his child support obligation decreased. At trial, testimony was presented that James was behind in reimbursing Charlotte for medical expenses which she had incurred for their daughter.[13] These unreimbursed expenses increased Charlotte's credit card debt. Further, Charlotte testified that although James was supposed to pay $800 per month in child support, he paid well under that amount each month and paid only sporadically, testifying that he "pays whatever, whenever." When asked how James's failure to pay child support obligations as prescribed by the Decree had affected her, Charlotte testified it affected her "terribly," stating that she is unable to budget for the month because she never knows when she is going to receive money from him. In addition, she testified that on more than one occasion, James had threatened to drag out their litigation, keeping her in court.[14] She further stated that she had no more savings and had to borrow money to pay her attorney.

Although there is some disagreement among Texas appellate courts concerning attorney's fees rendered as child support in non-enforcement cases, in *London v. London,* we examined an award of attor-

---

12. Indeed, the trial court construed the objective of the proceeding as determining "whether or not [James] intentionally quit his job and is trying to hide what new jobs he has to keep from paying child support."

13. At the time of the hearing in November 2002, James had not reimbursed Charlotte for the entire year of medical expenses.

14. "The trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *In re De La Pena,* 999 S.W.2d 521, 526 (Tex.App.-El Paso 1999, no pet.) (quoting *In re A.D.H.,* 979 S.W.2d 445, 447 (Tex.App.-Beaumont 1998, no pet.)).

ney's fees enforceable as child support and acknowledged that attorney's fees may be awarded as "necessaries" to the child in a suit for modification.[15] 94 S.W.3d at 145–47. Several other courts have reached the same conclusion. *See, e.g., A.J.L.,* 108 S.W.3d at 422 (construing order to pay attorney's fees as child support as order to pay necessaries for benefit of the child, in modification suit); *H.S.N.,* 69 S.W.3d 829, 835 (Tex.App.-Corpus Christi 2002, no pet.) (finding no abuse of discretion in award of attorney's fees as child support regarding motion to modify and motion to transfer); *see also Ex parte Wagner,* 905 S.W.2d 799, 803 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding) (finding award of attorney's fees as child support in paternity action was consistent with public policy and Texas Constitution regarding legal duty of parent to support child); *Daniels v. Allen,* 811 S.W.2d 278, 280 (Tex. App.-Tyler 1991, no writ) (noting, "[i]t is settled that attorney's fees rendered in

prosecution or defense of a suit affecting the parent-child relationship may be awarded as necessaries to the child"). Recently, however, in *In re Moers,* the First Court of Appeals examined section 157.167[16] of the Family Code and determined that an award of attorney's fees as child support is permissible *only* in a child-support *enforcement* proceeding.[17] *In re Moers,* 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). James relies on *Moers* in support of his argument.

We note, in *Moers,* our sister court relied in part on our holding in *Roosth v. Daggett,* 869 S.W.2d 634, 637 (Tex.App.-Houston [14th Dist.] 1994, orig. proceeding), to support its contention.[18] However, in *Roosth v. Daggett,* we stated that attorney's "[f]ees accrued as 'other than necessities for a child's support' are a debt, and are not enforceable by contempt."[19] 869 S.W.2d at 636–37. Importantly, in *Roosth*

15. This court ultimately reversed the award of attorney's fees incurred in the modification suit and awarded as child support because sufficient evidence was not presented to support the award. *London,* 94 S.W.3d at 147. Here, as previously stated, sufficient evidence was presented through Quinn's expert testimony.

16. Under section 157.167 of the Family Code, attorney's fees may be assessed against a respondent if the court finds he has failed to make child support payments. TEX. FAM. CODE ANN. § 157.167(a) (Vernon 2002). Fees ordered under that section may be enforced "by any means available for the enforcement of child support, including contempt." *Id.* § 157.167(c).

17. The amount of attorney's fees awarded as child support in *Moers* was over $140,000.

18. In *Moers,* the First Court of Appeals also applied a *de novo* standard of review. Here, we find that an abuse of discretion standard applies. Moreover, in that case, it was not alleged the petitioner was intentionally unemployed.

19. In *Roosth,* the relator sought a writ of mandamus to enjoin the trial judge from holding him in contempt for violation of a turnover order. 869 S.W.2d at 635. The relator had been ordered to pay $92,595 in attorney's fees "incurred for the benefit of the minor children." *Id.* Roosth appealed his divorce without filing a supersedeas bond. *Id.* His former wife's attorneys proceeded to execute on the award and the trial court signed a turnover order requiring Roosth to satisfy the money judgment. *Id.* His former wife then filed a motion to enforce the child support order and a motion to hold Roosth in contempt for violation of the turnover order. Stating that the attorney's fees were not incurred for the enforcement of child support, but rather from a joint divorce proceeding and suit affecting the parent-child relationship and the fees were designated as costs, this court held the fees were a debt that could have been suspended had Roosth filed a supersedeas bond. *Id.* at 637. We conditionally granted the writ directing the trial court to refrain from holding Roosth in contempt of the turnover order. *Id.*

*v. Roosth,* we held that based on the evidence, the trial court did not abuse its discretion in awarding the attorney's fees to Roosth's former wife as "necessaries" incurred for the benefit of the minor children. 889 S.W.2d at 456–57. Based upon the binding precedent of our decisions in *Roosth v. Roosth* and, more recently, in *London v. London,* we reject James's assertion that *Moers* controls our decision, and find that attorney's fees may be awarded as "necessaries" of the child in this case.

In sum, we hold it was not an abuse of discretion for the trial court to award the attorney's fees to Charlotte as additional child support. *See De La Pena,* 999 S.W.2d at 526 (holding an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision). James's fifth, sixth, and seventh issues are overruled.

### E. Did the trial court abuse its discretion by permitting an Assistant Attorney General to be present at trial?

In his ninth issue, James complains about the presence of an assistant attorney general who signed off on the order denying the modification. We have reviewed the record and find neither James nor his trial counsel made any complaint in the trial court regarding the presence of the assistant attorney general. *See* TEX. R. APP. P. 33.1. In fact, the reporter's record reflects that the assistant attorney general identified herself on the record to the judge as a courtesy only; she did not participate in the trial. Further, the record indicates James invited the assistant attorney general's presence at trial, because, as James testified, he had attempted to consolidate his suit to modify his child support obligation with the later-filed Title IV–D enforcement action. Also, we find no explanation for, or objection to, the

signature of the assistant attorney general on the order denying the child support modification. Because no error was preserved for appellate review, we overrule this issue. *See* TEX. R. APP. P. 33.1(a).

### F. Did the trial court abuse its discretion in admitting hearsay statements?

In issue ten, James contends the trial court abused its discretion by allowing him to interpret a statement in a letter written by his attorney to Charlotte's attorney, claiming it was objectionable hearsay. To preserve error for appeal, a party must make a timely, specific objection or motion to the trial court stating the grounds for the ruling sought with sufficient specificity. TEX. R. APP. P. 33.1.

The letter in question was admitted into evidence without objection. Thereafter, Charlotte's attorney asked, "What is your interpretation? Please read what that statement says." Later, Charlotte's attorney asked, "So, this letter says you have a job with your father making $15 an hour, correct?" No objection was made to the question and James answered it. Failure to object in a timely and specific manner during trial forfeits any right to voice complaints about the admissibility of evidence on appeal. *See* Tex.R.App. P. 33.1(a); *Atl. Richfield Co. v. Misty Prods., Inc.,* 820 S.W.2d 414, 421 (Tex.App.-Houston [14th Dist.] 1991, writ denied). In addition, even if the question invited inadmissible hearsay, James has failed to allege or show he was harmed by the admission of this evidence. *See* Tex.R.App. P. 44.1. We therefore overrule James's tenth issue.

### G. Did the trial court abuse its discretion by allowing James's attorney to withdraw?

James next argues the court erred in permitting his attorney to withdraw

from representing him two days before the trial court signed the order denying modification of the child-support obligation. On November 18, 2002, James's attorney filed a motion to withdraw. The trial court granted the motion on November 20, 2002. The order in question clearly contains James's signature agreeing to his counsel's withdrawal. On appeal, James can hardly be heard to complain because the trial court complied with his request. Error, if any, was waived by his conduct. *See GTE Mobilnet of S. Tex., Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 620 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (finding waiver when party asserted as error action taken by trial court at party's request). Moreover, James failed to present any alleged error or irregularity about the timing of the withdrawal of his lawyer to the trial court prior to appeal. *See id.* For this additional reason, any alleged error is waived. *See* TEX. R. APP. P. 33.1(a). Accordingly, we overrule James's tenth issue.

### H. Did the court err by allegedly violating Canon 3(B)(8)?

▮ Finally, James contends the trial court committed a breach of Canon 3(B)(8) of the Code of Judicial Conduct. In order to avoid waiver of an issue on appeal, a party must discuss in his brief the facts and the authorities upon which he relies to maintain the issue. *McPherson Enters., Inc. v. Producers Coop. Mktg. Ass'n, Inc.*, 827 S.W.2d 94, 96 (Tex.App.-Austin 1992, writ denied); *see also Clone Component Distribs. of Am., Inc. v. State*, 819 S.W.2d 593, 597 (Tex.App.-Dallas 1991, no writ) (finding that appellant's brief must include page references to record, citations of authorities relied upon, and discussion of facts to support point at issue). A party waives a point by failing to provide supporting argument and authorities. *McPherson*, 827 S.W.2d at 96. Be-

cause James has not provided any record cites or authority, his argument is waived. *See* Tex.R.App. P. 38.1. Accordingly, we overrule issue eleven.

For the foregoing reasons, the judgment of the trial court is affirmed.