**Opinion filed August 23, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00142-CV

_____

## BRYON BRANDON RIGGS, Appellant

## V.

## LAURA ELIZABETH PILLANS, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 022445**

## M E M O R A N D U M   O P I N I O N

The mother of L.E.P. retained an attorney to file a petition for writ of habeas corpus and an application for writ of attachment to have the child returned to her when the father refused to return the child. The trial court entered an order for issuance of writ of attachment and ordered that a hearing be held to determine the right of possession of the child. At the hearing on the petition for writ of habeas corpus, the trial court entered an order to return the child to the mother as the person entitled by law to possession of the child. The trial court also awarded the attorney for the mother attorney's fees in the amount of $2,500 and costs in the amount of $365. The father appeals from the judgment. His issue on appeal is that there was no evidence to support the award of the mother's attorney's fees and costs against him. We affirm.

*Standard of Review*

Section 106.002(a) of the Texas Family Code provides that a "court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney" in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 106.002(a) (West 2008). The reasonableness of attorney's fees is a question of fact to be determined by the trier of fact and must be supported by competent evidence. *Tull v. Tull*, 159 S.W.3d 758 (Tex. App.—Dallas 2005, no pet.). To support an award of reasonable attorney's fees, there normally should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, evidence on each of these factors is not necessary to determine the amount of an attorney's fee award. *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.).

A court can also look at the entire record, the evidence presented on reasonableness, the common knowledge of the lawyers and judges, and the relative success of the parties. *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.); *In re M.A.N.M.*, 231 S.W.3d at 567. Documentary evidence is not a prerequisite to an award of attorney's fees. *In re A.B.P.*, 291 S.W.3d at 99. It is within the trial court's sound discretion to award reasonable attorney's fees in a suit affecting the parent-child relationship. *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002).

Appellant's issue is a legal-sufficiency challenge. In *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005), the supreme court concluded as follows:

> The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.

This was a bench trial; however, the supreme court's admonition applies here as well.

*Testimony at the Hearing*

Laura Elizabeth Pillans is the mother of L.E.P. Bryon Brandon Riggs is her father. L.E.P. was born on January 23, 2010. On July 28, 2010, the County Court at Law of Williamson County entered an order establishing parent-child relationship that named Laura as the primary joint managing conservator and Bryon as a joint managing conservator of L.E.P. Because Bryon kept L.E.P for more than thirty days after Laura had let him have her for a visit and he had

refused to return her to Laura, Laura retained an attorney to file a petition for writ of habeas corpus and an application for writ of attachment to obtain the return of L.E.P. to Laura.

The petition and application were served on Bryon, who was living in Jones County. Laura alleged that she was entitled to possession of L.E.P. based on the terms of the Williamson County court order. She alleged that she believed that the child was in danger with Bryon because he was on felony probation and because the child was only fifteen months old and needed to be with Laura, the primary caretaker. In addition to the return of L.E.P., Laura requested judgment against Bryon for travel and other expenses incurred by her, reasonable attorney's fees, expenses, and costs of court. On March 30, 2011, the trial court issued an order for issuance of a writ of attachment with respect to L.E.P.

A hearing was held on April 4, 2011, on the petition for writ of habeas corpus to determine the right of possession of the child. The only witnesses were Laura and Bryon. Laura testified that their custody was governed by the Williamson County court order and submitted that order as the only exhibit. Laura stated that Bryon's mother had picked L.E.P. up on Thursday, March 24, and that Bryon was to return her to Laura on the following Sunday. Instead, Bryon kept L.E.P. for thirty-six days. Laura attempted to pick L.E.P. up twice, but was told to leave Bryon's property.

Laura testified that it was necessary to hire an attorney to get L.E.P. back. She was required to pay reasonable and necessary attorney's fees in the amount of $2,500 to have the petition and application filed because Bryon refused to return L.E.P. Even with the writ of attachment, the sheriff was not able to immediately retrieve L.E.P.; Bryon refused to tell the sheriff the location of L.E.P. Laura testified that she had to wait over six hours before the police were able to obtain possession of L.E.P. Laura testified that this was the second hearing where her attorney had represented her. The attorney had filed the documents for her and had been with her to obtain from the trial court the order for issuance of a writ of attachment.

In answer to her attorney's question, Laura testified that she and the attorney had agreed to a flat fee of $2,500. For that fee, the attorney agreed that he would obtain Laura's child through habeas and writ of attachment proceedings and that he would pay all costs out of his fee.

In his testimony, Bryon stated that he had been at work when the sheriff's deputy had come for L.E.P., and he agreed that there was a delay of six hours before he turned the child over to the sheriff's deputy. He acknowledged that he had originally planned to take L.E.P. back to

3

Laura on the Sunday following March 24. Bryon testified that Laura asked him to take L.E.P. to Laura's mother in Throckmorton; Laura was out of the state at the time. Bryon said that he refused to take L.E.P. to Laura's mother because he and Laura's mother did not get along. Bryon admitted that Laura had walked in his front door to pick up L.E.P. and that he had called the police, who told Laura that she had to leave the premises.

Bryon's attorney asked him if he thought that it was appropriate for him to be responsible for Laura's attorney's fees in this case. Bryon's response was, "No, I'm out the same amount."

At the end of the hearing, the trial court admonished Bryon that he should not ignore court orders such as the order from Williamson County.

*Analysis*

Before discussing Bryon's issue, we should address Laura's failure to file a brief. An appellee need not raise cross-points or even file a brief to have this court consider what was presented to the trial court; the burden rests on the appellant to establish grounds for reversal. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 478 n.6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

There was no testimony about Laura's attorney's hourly rate or the number of hours he spent on the case. Although the attorney should have testified as to his fee, there is no rigid requirement that there must be evidence on both of these facts to make a determination of attorney's fees. *Sandles v. Howerton*, 163 S.W.3d 829, 839 (Tex. App.—Dallas 2005, no pet.). It was undisputed that Laura's attorney represented her at the March 30 hearing on her application for writ of attachment and at the April 4 hearing on her petition for writ of habeas corpus. The attorney also spent time on drafting the petition, application, and court orders and meeting with Laura.

It was obvious that Laura was required to employ an attorney to get her child back. She testified that she and her attorney agreed that $2,500 was a reasonable fee for his services. Because it was an agreed flat fee, there was the possibility that her attorney might have incurred a loss if the litigation had escalated.

Bryon did not challenge the reasonableness of the $2,500 fee. He simply expressed his opinion that he should not have to pay Laura's attorney because he had paid about the same

amount to his attorney. His statement was an implicit acknowledgement that the attorney's fee was reasonable.

The supreme court in *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009), involving an award of attorney's fees, pointed out "that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Id.* at 547. The supreme court went on to say, "The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Id.* at 547 (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990)).

The award by the trial court also met the admonition by the supreme court in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), that the factfinder should consider "the amount involved and the results obtained." *Smith*, 296 S.W.3d at 548. We have considered the entire record and the common knowledge of the lawyers and the judge in this case. In addition to the undisputed testimony that the flat fee was reasonable, the judge was entitled to evaluate the attorney's fees in terms of his knowledge of fees charged in Jones County. We find that the order awarding Laura's attorney his attorney's fees and costs was reasonable and necessary.

*This Court's Ruling*

The order of the trial court is affirmed.


TERRY McCALL
JUSTICE

August 23, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

5