**Opinion issued October 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00992-CV

———————————

**BRADLEY SCOTT BRANHAM, Appellant**

**V.**

**MELANIE DEE DAVENPORT, Appellee**

---

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Case No. CCL-6106**

---

## MEMORANDUM OPINION

This appeal involves a dispute between former spouses over child custody and child support payments. In three issues, appellant Bradley Scott Branham challenges the trial court's refusal to modify the possessory terms of his divorce

decree as he requested, the trial court's increase of his child support obligation, and the award of attorney's fees. We affirm.

## Background

Branham, a disabled veteran, and Melanie Dee Davenport divorced in 2010. They had one child, a daughter, during their marriage. Branham and Davenport entered into a mediated settlement agreement ("MSA") on June 16, 2010, which provided for their respective possessory rights to the child and child support payments. The MSA was the basis for the terms of their "Agreed Final Decree of Divorce," signed by the court on July 1, 2010.

Two months later, Branham filed a petition to modify the parent-child relationship. Under the terms of the MSA and divorce decree, Branham would pick up and return the child at Davenport's residence in Port Lavaca, Texas. In his petition, Branham sought to modify these terms so that the child could be exchanged somewhere halfway between Port Lavaca and Branham's residence, located 246 miles away from Port Lavaca in Gatesville, Texas. Davenport responded by filing a counter-petition in which, among other requests, she sought an increase in Branham's child-support payments. The trial court held a two-day hearing on the modification motions in July 2011.

At trial, Branham presented evidence regarding the circumstances that he believed had materially and substantially changed since he and Davenport entered

into the MSA and their divorce became final. He testified that he had moved to Gatesville on May 30, 2010, only two weeks before entering into the MSA, and so he had not realized the effect that the long drive between Gatesville and Port Lavaca would have on him and his daughter. Before the divorce, he had only made the drive one or two times and would stop at places closer than Gatesville during his periods of possession. Branham had been diagnosed in May 2010 with post-traumatic stress disorder, but he did not understand that driving long distances with PTSD was causing him psychological stress and physical problems, such as diarrhea, until he received treatment from doctors in December 2010. Branham's physical injuries also increasingly caused him pain during the drive. Branham's current wife, Kelli Forrester, whom he was seeing in July 2010 and married in December 2010, also testified that the travel took a toll on Branham, exacerbating his physical and psychological problems.

The drive to pick up and return the child also became much more expensive between the divorce and the time of trial, because the price of gas increased by approximately $1.30 to $1.40 per gallon. According to Branham, he had been unable to exercise one period of possession with his daughter because he could not afford to pay for the gasoline.

Davenport disputed Branham's account that the effects of the drive were a material and substantial change from circumstances at the time of the divorce, and

3

she questioned Branham's motivation in seeking the modification. Rather than moving to Gatesville on May 30, 2010, she testified that Branham had lived in Gatesville for six months before the divorce. She presented a copy of a text message Branham had sent her after the divorce in which he told her, "You have got to be the craziest person I know. . . . Hope your [sic] ready to spend some money because I'm fixing to take you back to court and take custody of [the child]. Jacked with the wrong guy."

Davenport indicated that Branham's testimony concerning his problems driving was untrustworthy because he had given an implausible story about moving to Gatesville. Branham stated that he had moved to Gatesville to be closer to Veterans Benefits Administration hospitals and that his move had nothing to do with his current wife, a long-time resident of Gatesville, although he began living with Forrester at the time of the divorce and there were several Veterans Benefits Administration hospitals and clinics near Port Lavaca and in much closer proximity to where Branham had lived before moving. Davenport also presented a video showing that Branham frequently arrives to pick up or drop off the child with his wife in the passenger seat. Davenport testified that this behavior was consistent with Branham's behavior during their marriage when he would always insist on driving. Davenport admitted on cross-examination, however, that

whether he drove or not, Branham would have to spend long periods of time in the car to exercise his possessory periods with the child.

Regarding her child-support modification request, Davenport presented evidence of Branham's income at the time of the divorce and at the time of the motion for modification. According to a Veterans Benefits Administration letter dated May 18, 2010, as an unemployable veteran with two dependents, Branham received a monthly payment of at least $2,932 since 2009. Davenport argued that Branham's obligation to pay $422 per month in child support based on this income was less than the statutory child-support guideline, which would have been $586. *See* TEX. FAM. CODE ANN. § 154.125 (West Supp. 2012) (providing that the court shall presumptively order that an obligor pay 20% of monthly net resources in child support for one child).

To demonstrate that Branham's income had increased, Davenport introduced a copy of Branham's bank account statement from June 2011. The statement reflected that the Veterans Benefits Administration made two deposits into Branham's account that June for $3,007 and $1,149, totaling $4,156. She presented another statement from a few weeks before trial showing that Branham had transferred $727 from his personal account into his joint account with Forrester, which Davenport believed was an attempt to hide his income.

5

Davenport testified that she had seen other bank statements showing that Branham received more than $3,000 per month from the Veterans Benefits Administration.

In discovery before the hearing, Davenport had requested four months of bank account statements, but Branham provided her with only four statements. Davenport explained that during her marriage to him, she had often seen Branham engaging in work to earn additional income. Finally, she introduced a message Branham posted on Facebook the day after the MSA was executed, stating that "out of almost $5,000 a month in income, she only got $422 a month."

Branham attempted to refute Davenport's testimony, explaining that the June deposits were unusually large because the $1,149 reflected a back payment owed to him. He said his benefits had decreased when he divorced Davenport because she was no longer his dependent spouse. The benefits then increased when he married Forrester, adding her and her daughter as dependents, but it took the Veterans Benefits Administration several months to increase his benefits to the new amount, and so the administration made a lump payment of $1,149 in June for those months when he had not received benefits for his dependents. Branham said he was not engaged in any other employment, either sporadic or otherwise, because his veteran benefits were based on being unemployed. He testified that veteran benefits are his only source of income, which only amount to $3,007 monthly.

6

The trial court found that there had been a material and substantial change of circumstances with respect to the child support requested by Davenport, and it ordered Branham to pay $750 per month in child support. The trial court did not change the terms of the original divorce decree providing that Branham had to pick up and drop off the child at Davenport's residence. Finally, the trial court ordered Branham to pay $5,000 of Davenport's attorney's fees. In pertinent part, the trial court found that:

> 7. At the time of trial the child was approximately 6 weeks shy of turning three (3) years of age.
>
> 8. The agreement already included an increase in [Branham]'s times of access and possession for when the child attains the age of 3 years.
>
> . . . .
>
> 11. [Branham]'s testimony and evidence often lacked credibility.
>
> 12. [Davenport]'s testimony and evidence were very credible.
>
> 13. [Davenport]'s evidence was not sufficient to show any material and substantial changes in circumstances that would give rise to a modification of the agreement in a manner as requested by [Branham] in his pleadings.
>
> 14. It would not be in the child's best interest to modify the [MSA and divorce] agreement as requested by [Branham]. . . .
>
> 20. The prior agreement required [Branham] to pay $442.60 per month to [Davenport] for support of the child.
>
> 21. [Davenport] proved that since the mediated settlement agreement, circumstances of the parties and the child had changed which warranted an increase in [Davenport]'s periodic monthly support to $750.00 per month.

7

22. The increase in [Branham]'s child support payments to $750.00 per month is in the child's best interest. . . .

29. [Davenport]'s attorney proved up reasonable and necessary attorney's fees and costs in excess of $5,000.00 incurred by [Davenport] in behalf of the child in connection with this suit.

Branham then filed this timely appeal. On appeal, he argues that the trial court abused its discretion in failing to modify the terms of possession, increasing his child support payments, and awarding $5,000 in attorney's fees.

## Analysis

A trial court has broad discretion in ruling on matters pertaining to child support and possession, and it will not be reversed absent a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Moreno v. Perez*, 363 S.W.3d 725, 735, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Worford*, 801 S.W.2d at 109; *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Sufficiency challenges are not independent points of error in the child-support context, but are relevant factors in assessing whether a trial court abused its discretion. *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We employ a two-pronged inquiry in such cases: (1) whether the trial court had

8

sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Moreno*, 363 S.W.3d at 735.

If some probative and substantive evidence supports the order, there is no abuse of discretion. *Newberry*, 146 S.W.3d at 235. After a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In reviewing a ruling that results from the trial court's resolution of underlying facts, we must defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for the trial court's in those matters. *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In a bench trial, the trial court is the factfinder and the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)

## I. Child custody modification

In his first issue, Branham argues that the trial court abused its discretion in denying the modification he requested in possessory rights because there was uncontroverted evidence that circumstances had changed since the execution of the parties' MSA. Specifically, Branham notes that he presented evidence of a drastic increase in gas prices, his realization that his PTSD was causing him increased

physical and psychological problems in making long drives, and the child's increased agitation during long drives between his home and Davenport's.

Texas law has imposed "significant hurdles" before a conservatorship order may be modified. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A trial court may modify an order that provides for the possession of or access to a child if the modification would be in the child's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of . . . the date of the rendition of the order . . . or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based." TEX. FAM. CODE ANN. § 156.101(a)(1) (West Supp. 2012). The best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (West 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). The movant "must show a material and substantial change in circumstances; otherwise, the petition must be denied." *A.L.E.*, 279 S.W.3d at 428.

Regarding the terms and conditions of conservatorship, "the trial court is in the best position to observe the credibility and personalities of the witnesses, and, consequently, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence." *In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App.—

10

Houston [1st Dist.] 2001, pet. denied). In determining whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines, but makes a fact-specific inquiry according to the circumstances as they arise. *A.L.E.*, 279 S.W.3d at 428. Other courts have recognized material changes affecting possession and conservatorship as including (1) the marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in home surroundings, (4) mistreatment of the child by a parent, or (5) a parent becoming an improper person to exercise custody. *Id.* at 429.

The evidence Branham presented regarding the change in circumstances surrounding his drive between Gatesville and Port Lavaca was his testimony, and that of his wife and Davenport. As Branham acknowledged, he had already moved to Gatesville and made the drive between Gatesville and Port Lavaca before the MSA and "Agreed Final Decree of Divorce" were signed. He acknowledged that he already had been diagnosed with PTSD before the divorce. Although he said that he did not realize the impact his PTSD may be having on his driving until he consulted doctors in December 2010, he filed his motion for modification of the possessory periods before that, in September 2010. He also continued to drive on the trips between Gatesville and Port Lavaca although his wife was able to drive in his stead. Controverting his explanation that he was seeking increased possessory

11

rights due to problems only with the long drive, Davenport introduced a text message in which Branham said that he was going to take her to court to seek custody because he was angry with her. And Davenport testified that Branham had moved to Gatesville six months before the divorce to be with Forrester, undermining Branham's testimony that he had moved to Gatesville only a few weeks before the divorce to be closer to Veterans Benefits Administration hospitals.

The trial court, as the factfinder, was the sole judge of the credibility of the witnesses and was free to give more weight to Davenport's testimony than Branham's. *See City of Keller*, 168 S.W.3d at 819. Based on the aforementioned evidence, the trial court had sufficient information to conclude that, while there may have been some undisputed changes in circumstance such as an increase in the price of gasoline, the changes Branham described were not material and substantial changes warranting a modification of the possession order. *See, e.g.*, *Zeifman v. Michels*, 212 S.W.3d 582, 594–95 (Tex. App.—Austin 2006, pet. denied) (holding evidence of child's change from infant to seven-year-old with academic potential did not amount to material and substantial change); *Considine v. Considine*, 726 S.W.2d 253, 255–56 (Tex. App.—Austin 1987, no writ) (movant presented no evidence of material and substantial change although she had remarried and moved to Canada). In addition, there was no showing that Branham's requested

modification was in the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.002; *Lenz*, 79 S.W.3d at 14. Accordingly, Branham has not shown that the trial court abused its discretion with respect to his requests for modification, and we overrule his first issue.

## II.    Child support modification

In his second issue, Branham contests the trial court's increase in his child support obligation. A court may modify an order that provides for the support of a child if "the circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition . . . or the date of the signing of a mediated or collaborative law settlement on which the order is based." TEX. FAM. CODE ANN. § 156.501(a)(1) (West 2011). In determining whether a modification of support is necessary, the trial court is to examine and compare the circumstances of the parents and the child at the time of the initial order with the circumstances existing at the time modification is sought. *London v. London*, 192 S.W.3d 6, 15 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The record must contain both historical and current evidence of the relevant person's financial circumstances, because without both sets of data, the court has nothing to compare and cannot determine whether a material and substantial change has occurred. *London*, 192 S.W.3d at 15.

The requesting party bears the burden to show the requisite change in circumstances. *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 666–67 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The party's financial ability to pay child support does not depend solely on current earnings, but extends to all sources that might be available. *Id.*; *see also* TEX. FAM. CODE ANN. § 154.062 (in calculating net resources for child support, court may look at all income actually being received). The trial court is not required to accept the child-support obligor's evidence of income as true, but instead it may properly determine that an obligor has higher net resources based on testimony by the obligee and other evidence in the record. *In re N.T.*, 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.). The trial court's findings must be supported by a preponderance of the evidence. TEX. FAM. CODE ANN. § 105.005.

Davenport presented evidence that Branham was receiving $2,932 in monthly income at the time of the divorce, and that his income had materially and substantially increased since then. She introduced a bank statement showing that Branham received $4,156 in June 2011 from the Veterans Benefits Administration. Branham testified that the $4,156 was not his regular income, as that amount included a non-recurring back payment for his dependents.

But other evidence before the trial court undermined his credibility. Davenport testified that she had requested four-months' worth of bank statements

14

but Branham only provided four statements, one of which was merely a transfer payment. Davenport introduced the statement showing a $727 transfer from Branham's account to his joint account with Forrester. Davenport testified that Branham had said these transfers were for when he would purchase items such as groceries for the family, and Forrester would reimburse him. But the transfer showed that the money was moving from Branham's account to the joint account with Forrester, contradicting Branham's statement. Davenport also introduced a message Branham posted to Facebook in which he said, "out of almost $5,000 a month in income, she only got $422 a month."

Deferring to the trial court's determination that Branham was not credible while Davenport was, we conclude that this evidence was sufficient to support a conclusion that there had been a material and substantial change in Branham's income to justify a modification in child support. The trial court increased the amount of monthly child support to $750. Under the Family Code, the trial court shall presumptively order a child support provider to pay 20% of his monthly net resources for one child. *See* TEX. FAM. CODE ANN. § 154.125. Assuming it applied this presumption, the trial court impliedly found that Branham had monthly net resources of $3,750, which is less than Branham's claim of $5,000 in monthly income and also less than the $4,156 monthly income reflected in the June 2011 bank statement. $3,750 would also roughly correspond to the amount Branham

15

acknowledged he received in July 2011, when his income included $3,007, plus the amount of his transfer payment of $727.

Branham contends that "there is a glaring inconsistency" in the court's findings that the increase in his income was a material and substantial change in circumstances but that his increased fuel expense was not a material and substantial change in circumstances for purposes of the terms of possession. Branham argues that the court "found that the fact that [he] was incurring $400.00 to $600 per month in additional travel expenses to exercise possessory rights was not a material and substantial change in [his] circumstances." However, the trial court made no finding of fact regarding Branham's travel expenses. The court found that Branham's "testimony and evidence often lacked credibility." As we have explained, we defer to the trial court's factual resolutions and credibility determinations. We see no glaring inconsistency in the trial court's resolution of the factual questions pertaining to the change in Branham's financial circumstances.

Accordingly, we hold that the trial court did not abuse its discretion in increasing Branham's monthly child support obligation. We overrule Branham's second issue.

## III. Attorney's fees

In his third issue, Branham argues that "because the trial court erred in denying his requested modification and granting Davenport's requested modification, it acted arbitrarily or unreasonably or without regard to any guiding rules of [sic] principles, and the issue of attorney's fees should be remanded for reconsideration." The Family Code authorizes the trial court to award reasonable attorney's fees in a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 106.002 (West 2008). We review the award of attorney's fees for abuse of discretion. *Watts v. Oliver*, 396 S.W.3d 124, 132 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). The award must be supported by evidence, however, that should include testimony regarding the hours spent on the case, the nature of preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The trial court awarded Davenport $5,000 in reasonable and necessary attorney's fees. This award was supported by the testimony of Davenport's attorney, who requested $31,670 in total fees based on the hours she worked on the case, the nature of the case, her experience, and the prevailing hourly rates. Branham does not challenge this testimony or the amount of the $5,000 award—he challenges the award only on the basis that Davenport should not have prevailed.

17

Because the trial court did not err in its determination of the parties' modification requests and Branham does not dispute the amount or reasonableness of the fees awarded, we conclude that the trial court did not abuse its discretion in awarding Davenport $5,000 in attorney's fees. We overrule Branham's third issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.