**Petition for Writ of Mandamus Conditionally Granted in Part and Denied in Part and Opinion filed December 1, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00698-CV

---

### IN RE JENNIFER BRADEN, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**328th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 14-DCV-216657**

---

## OPINION

On August 19, 2015, relator Jennifer Braden filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Ronald Pope, presiding judge of the 328th District Court of Fort Bend County, to

set aside the February 27, 2015 amended order of enforcement by contempt. We conditionally grant the petition in part and deny it in part.

## I. BACKGROUND

The parties, who have one child, have never been married. Relator resides in Texas, and Father resides in New York. On November 22, 2013, the Hon. David Farr of the 312th District Court of Harris County signed an order appointing the parties joint managing conservators of the child and awarding relator the exclusive right to designate the primary residence of the child in Texas and New York. The case was subsequently transferred to the 328th District Court in Fort Bend County.

On May 16, 2014, Father filed a motion for enforcement of possession or access and, alternatively, motion to modify. Father alleged that relator had failed to comply with the November 22, 2013 order by, among the twenty-nine violations alleged, failing to deliver the child to the airport on January 17, 2014, for a four-day visitation in New York, and he requested that relator be held in contempt. Father further requested that he be awarded additional periods of possession to compensate for those periods in which relator did not surrender the child. Father further sought modification of the November 22, 2013 order by appointing him the person who has the right to designate the child's primary residence based on relator's interference with his possession and access to the child.

On November 13, 2014, relator filed her "Original Answer, Response in Opposition, and Special Exceptions to Petitioner's Motion for Enforcement of Possession or Access, or in the Alternative, Motion to Modify." Relator asserted

that she was not able to comply with the order because Father had failed to purchase the airline tickets for the child for the January 17, 2014 visitation.

The associate judge of the 328th District Court, the Honorable Walter Armatys, held an evidentiary hearing on the motion to enforce on December 15, 2014. At the conclusion of the hearing, Judge Armatys found relator in contempt for not turning the child over to Father for the January 17, 2014 visitation. Judge Armatys announced that relator was sentenced to sixty days' confinement, with the sentence being suspended conditioned upon compliance with the underlying order and future compliance with the contempt order.

Judge Armatys awarded Father sixty-two days of make-up visitation, and a judgment in the amount of $5,088.50—$4,500 in attorney's fees and $588.50 in airline fees. Relator was ordered to pay $200 per month toward the judgment. Judge Armatys ordered relator to return to court on April 21, 2015, and August 19, 2015, for compliance hearings. Judge Armatys also modified the November 22, 2013 order by reducing Father's monthly child support payment from $1,032.27 to $229.00. Judge Armatys signed the contempt order and suspension of commitment at a hearing on January 7, 2015.

On December 22, 2014, relator filed a motion to reconsider, which Judge Armatys denied at the January 7, 2015 hearing. Relator filed a motion to modify, correct, or reform the judgment on February 3, 2015, complaining in part that Judge Armatys had improperly modified the underlying order in the contempt judgment. Judge Armatys held a hearing on the motion on February 16, 2015, and granted the motion to modify, in part, and denied it, in part. On February 27, 2015,

3

Judge Armatys signed two separate orders—an amended order for enforcement by contempt and a modification order reducing Father's monthly child support payment. Judge Armatys signed findings of fact and conclusions of law on April 6, 2015, regarding the contempt and the modification rulings.

On April 9, 2015, relator filed a motion for de novo review of the orders signed by Judge Armatys on February 27, 2015. On April 29, 2015, Judge Armatys signed an order vacating the February 27, 2015 temporary orders in the modification suit, which had reduced Father's monthly child support payment.

On June 18, 2015, Father filed a motion to revoke the suspension of commitment of February 27, 2015, and sought an order for relator to appear. On June 22, 2015, relator filed a motion to dismiss Father's motion to modify and temporary orders for failure to state a cause of action and want of prosecution. Relator also filed a motion for the adoption, modification, or rejection of Judge Armatys's February 27, 2015 amended contempt order by the referring court. According to relator, Judge Armatys informed her, on June 25, 2015, that Judge Pope, the presiding judge of the 328th District Court, had already signed and adopted the February 27, 2015 amended contempt order. The February 27, 2015 amended order contains Judge Pope's signature, although it does not reflect the date on which he signed it.

In this mandamus proceeding, relator requests that we compel Judge Pope to vacate the February 27, 2015 amended contempt order.

## II. STANDARD OF REVIEW

Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, but may be reviewed by writ of mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam on reh'g). To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Contempt orders are not appealable. *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 789 n.15 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Glassman v. Goodfriend*, 347 S.W.3d 772, 780−81 (Tex. App.—Houston [14th Dist.] 2011), pet. denied) (en banc). Therefore, no adequate remedy by appeal exists.

## III. ANALYSIS

### A. January 17, 2014 Visitation

### 1. Purchase & Delivery of the Child's Airline Tickets

Relator claims that Father did not purchase a ticket for the child with an escort or deliver the ticket to her pursuant to the November 22, 2013 order. Relator, therefore, contends that she was precluded from putting the child on the

flight to New York on January 17, 2014, by Father's failure to comply with the terms of the November 22, 2013 order.

The November 22, 2013 order provides the following regarding travel arrangements in connection with the child's visitation with Father:

IT IS ORDERED that the following provisions shall govern the arrangements for the travel of the child to and from [Father]:

Notice of Place and Time of Possession - IT IS ORDERED that, if [Father] desires to take possession of the child at an airport near [Father's] residence, [Father] shall state these facts in a notice letter to [relator]:

a. the airport where [relator] is to surrender the child;

b. the date and time of the flight on which the child is scheduled to leave;

c. the airline and flight number of the airplane on which the child is scheduled to leave;

d. the airport where the child will return to [relator] at the end of the period of possession;

e. the date and time of the flight on which the child is scheduled to return to that airport; and

f. the airline and flight number of the airplane on which the child is scheduled to return to [relator] at the end of the period of possession.

The order directed each party to "surrender the child to a flight attendant who is employed by the airline and who will be flying on the same flight on which the child is scheduled" until the child reaches the age of fourteen. The order

6

further directed that "[Father] shall purchase, in advance, the round-trip airline tickets (including escort fees) to be used by the child for the child's flight . . . [and] make necessary arrangements with the airlines and with [relator] in order that the airline tickets are available to the child before a scheduled flight."

At the hearing, Father identified Exhibit 11 as the email he sent to relator with the details of the January 17, 2014 trip, e.g., "everything that [he was] supposed to give her notice of with regard to the airport and the dates, and the time of the return, the flight[.]" Father also identified Exhibit 12 as an email from him to his attorneys, in which he is forwarding the email he received from United Airlines on January 9, 2014, with the e-ticket information. In Exhibit 12, Father stated to his attorneys that "I had to let this flight go as a no-show and United has not provided me with any compensation. This ticket cost 288.50 + 300 for the unaccompanied minor fee (that 300 was refunded)." Father testified that Exhibit 12 is "a no-show by the airline, and I want the full value, which is $288.50." Exhibit 12 shows that Father purchased the child's ticket with a credit card.

The trial court found the following in Finding of Fact No. 2: "[Father] stated that all tickets were unaccompanied minor tickets. He had previously asked [relator] for their identification information, so that the airline could take the child from [relator], put her on the plane, and deliver her to Dad." Father testified that "all tickets [he] purchase[d] are where [the child] flies as an unaccompanied minor." It was Father's "understanding that United and Jet Blue allow unaccompanied minors of [the child's age] to travel that way." Father testified on questioning by relator's attorney that "All tickets [he] purchase[s] have escorts.

7

They are unaccompanied minor tickets. . . . Every single ticket I purchase has an unaccompanied minor fee. They don't always put them in the email, but they are always covered. . . . That is why I asked [relator] for her ID information so that I could give it to the airlines so they know who is going to be dropping the child off and who is picking them up." Father's testimony supports Finding of Fact No. 2 that all airline tickets he purchased were for an unaccompanied minor.

As to relator's claim that Father did not "deliver" the airline ticket to her, the November 22, 2013 order does not require Father to "deliver" the airline tickets to relator. Instead, it directs Father to make arrangements with the airline relator "in order that the airline tickets are available to the child before a scheduled flight." Father purchased e-tickets for the child and, therefore, complied with the order to make the tickets available for the flight. Moreover, the order directs Father to provide relator with the flight information. Father's testimony shows that he provided all the required information in compliance with the order.

Relator has not shown that Father failed to comply with the November 22, 2013 order, which purportedly would have relieved relator of her obligation to surrender the child on January 17, 2014.

## 2. Willful Noncompliance with the November 22, 2013 Order

Relator further argues that Father presented no evidence that her violation of the order was willful because Father purchased an adult ticket for the child. Relator, therefore, claims that any failure to comply with the order was due to a mistake of fact, and accidental or inadvertent noncompliance negates willfulness.

8

A criminal contempt conviction for violation of a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding).[1]  In a mandamus proceeding, the appellate court cannot weigh the evidence supporting the trial court's contempt finding, but the court can determine whether a contempt judgment is void because there is no evidence of contempt. *Long*, 984 S.W.2d at 626−27.  "Noncompliance with an unambiguous order of which one has notice will ordinarily raise an inference that the noncompliance was willful." *Chambers*, 898 S.W.2d at 261. "The involuntary inability to comply with an order is a valid defense to criminal contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary." *Id.*  It is the relator's burden to prove conclusively her inability to comply. *Id.*

As concluded above, Father complied with the November 22, 2013 order by purchasing an unaccompanied minor ticket with an escort fee and making the

---

[1] Criminal contempt is punitive in nature. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act, which affronted the dignity and authority of the court. *Id.* "'Ordinarily, the punishment is fixed and definite and no subsequent voluntary act on the part of the defendant can enable him to avoid punishment for his past acts.'" *Id.* at 546 (quoting *Ex parte Hosken*, 480 S.W.2d 18, 23 (Tex. Civ. App.—Beaumont 1972, orig. proceeding)).  In a civil contempt proceeding, the court is attempting to persuade the contemnor to obey the previous order. *In re Small*, 286 S.W.3d 525, 531 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (op. on reh'g).  A civil contempt order provides that the contemnor is to be committed until he performs the affirmative act required by the order. *Id.*  Where the contemnor can avoid incarceration by obeying the order, he is said to "'carry the keys of (his) prison in (his) own pocket.'" *Werblud*, 536 S.W.2d at 545 (quoting *Shillitani v. United States*, 384 US. 364, 368 (1966)). Thus, the distinction between criminal and civil contempt does not turn on whether the underlying case is civil or criminal, but on the nature of the court's punishment. *Reece*, 341 S.W.3d at 365.

ticket available to relator for the January 17, 2014 visitation. Relator did not conclusively prove her inability to comply with the November 22, 2013 order directing her to surrender the child for the January 17, 2014 visitation. We hold that the trial court did not abuse its discretion by finding relator in contempt for failing to surrender the child for the January 17, 2014 visitation.

## B. Award of Attorney's Fees

Relator asserts that the trial court abused its discretion by providing that the $4,500 attorney's fees award is enforceable by contempt. Relator asserts that Father did not distinguish attorney's fees incurred in connection with enforcement of the November 22, 2013 order from those incurred in connection with the modification of that order. A child support obligation and attorney's fees related to a child support enforcement proceeding are considered a legal duty, not debt, and may be enforced by contempt. *Tucker v. Thomas*, 419 S.W.3d 292, 297 (Tex. 2013). In an enforcement proceeding under Chapter 157 of the Family Code, a court may enforce an award of attorney's fees by the same means available for the enforcement of a child support obligation, including contempt. Tex. Fam. Code Ann. § 157.167(a), (b) (West 2014).

In the absence of express statutory authority, a trial court does not have the discretion to characterize attorney's fees awarded in a non-enforcement modification suit as necessaries or as additional child support. *Tucker*, 419 S.W.3d at 295. Chapter 156 of the Texas Family Code provides for an award of attorney's fees in a non-enforcement modification proceeding only when the suit is frivolous or filed with the purpose of harassing the opposing party. Tex. Fam.Code Ann.

10

§ 156.005 (West 2014); *Tucker*, 419 S.W.3d at 300. Section 156.005 does not apply here. Therefore, trial court was required to look to Section 106.002 of the Family Code, the general attorney's fee provision, for authority to award attorney's fees in non-enforcement modification suits. *See Tucker*, 419 S.W.3d at 300. Attorney's fees awarded under section 106.002 may be enforced by any means available for the enforcement of a judgment for debt. Tex. Fam. Code Ann. § 106.002(b) (West 2014). The Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." Tex. Const. art. I, § 18. An order for debt may be enforced through a legal process such as execution or attachment, but a confinement order premised on failure to pay a debt is void. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding) (per curiam).

Father's attorney testified about attorney's fees at the December 15, 2014 hearing. Exhibit 36, which was admitted into evidence, shows a summary of attorney's fees incurred from January 2014 through December 1, 2014, for relator's "failure to comply with order, enforcement And Motion to Modify." Father's attorney did not attempt to segregate attorney's fees incurred for work performed in connection with the enforcement proceeding—fees that can be enforced through contempt—from attorney's fees incurred for work performed in connection with the modification proceeding—fees that cannot be enforced through contempt.

The Austin Court of Appeals has addressed the failure to segregate fees incurred to enforce child support from those incurred to modify custody. *See Kogel v. Robertson*, No. 03-04-00246-CV, 2005 WL 3234627 (Tex. App.—Austin

11

Dec. 2, 2005, no pet.) (mem. op. on reh'g).  In *Kogel*, the trial court issued both enforcement and modification orders.  *Id.* at *2.  The trial court awarded attorney's fees in the enforcement order and characterized the entire award of fees as "in the nature of child support."  *Id.* at *10.  The court of appeals observed that the attorney's fees award included fees incurred for enforcement of the child support order, which could be properly characterized as "in the nature of child support" and enforced by contempt, as well as fees incurred in the modification suit, which could only be awarded as costs and enforced as a debt.  *Id.*  Neither the father's evidence nor the trial court's order segregated the fees between enforcement and modification.  *Id.*  The court of appeals held that the trial court incorrectly characterized a portion of the fee award as "in the nature of child support" and impermissibly subjected the mother to fine or confinement for failure to pay a debt. *Id.*  Because the court could not distinguish between the portions of fees that were child support and the portions that were debt, the court reformed the trial court's order by deleting the characterization of the awards as "in the nature of child support" so that the awards were only enforceable as debt.  *Id.*

Similarly, Father made no attempt to segregate the fees incurred in the enforcement proceeding from the fees incurred in the modification proceeding. Although there is evidence in the record to support an award of $4,500 in attorney's fees, in the absence of any segregation of fees incurred for enforcement from fees incurred for modification, there is no evidence that the trial court's $4,500 award was solely for fees attributable to the enforcement action that can be enforced by contempt.  We therefore hold that the $4,500 award of attorney's fees

12

is enforceable only as a debt, and the trial court abused its discretion by making the fee award enforceable by contempt. Therefore, we order the trial court to vacate the portion of the February 27, 2015 amended enforcement order providing that the $4,500 attorney's fees award "may be enforced by means available for the enforcement of child support, including contempt, but not wage withholding," and amend the order to provide that the award of attorney's fees is a debt.[2]

**Award of Make-Up Time of Possession**

Relator contends that the trial court abused its discretion by awarding sixty-two days of make-up possession when she was only found in contempt for one violation of the possession order for four days in connection with the January 17, 2014 visitation. Pursuant to Section 157.168 of the Texas Family Code, a court has the discretion to award additional periods of possession of or access to the child to compensate for the denial of court-ordered possession or access. Tex. Fam. Code Ann. § 157.168(a) (West 2014). The additional periods of possession or access, however, must be of the same type and duration of the possession or access that was denied. *Id.* § 157.168(a)(1).

The "same type and duration" means "the same amount of time." *In re Zevallos*, No. 14-11-01080-CV, 2012 WL 359301, at *3 (Tex. App.—Houston [14th Dist.] Feb. 2, 2012, orig. proceeding) (mem. op.) (citing *Romero v. Zapien*,

---

[2] Relator contends that (1) Father's pleadings do not support the award of attorney's fees as enforceable by contempt because he did not plead that enforcement of the November 22, 2013 order "was necessary to ensure the child's physical or emotional health or welfare"; and (2) no evidence was adduced at trial on this issue. In light of our conclusion that the award of attorney's fees is not enforceable by contempt, we need not address these arguments.

13

No. 13-07-00758-CV, 2010 WL 2543897, at *15 (Tex. App.—Corpus Christi June 24, 2010, pet. denied) (mem. op.), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 78 & n.2 (Tex. 2011))  A trial court abuses its discretion under section 157.168 by awarding make-up time that is greater than those periods for which possession or access was denied.  *In re Celestine*, No. 14-14-00133-CV, 2014 WL 1390387, at *3 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, orig. proceeding) (mem. op.); *In re Ramberansingh*, No. 05-13-00558-CV, 2013 WL 3871047, at *1 (Tex App.—Dallas July 23, 2013, orig. proceeding) (mem. op.).

The sixty-two days of additional possession, which included spring break visitation in odd numbered years in addition to spring break visitation in even numbered years and an additional seven days of summer visitation for four years, far exceeds the four days of possession that the trial court found relator had denied Father.  Therefore, the trial court abused its discretion by awarding additional possession greater than that which relator had denied Father.  *See Celestine*, 2014 WL 1390387, at *4 (holding the trial court exceeded its authority by finding the relator had denied possession for 152 hours, or slightly over six days, but awarding each forty-eight-hour weekend period in which the relator would be incarcerated); *Ramberansingh*, 2013 WL 3871047, at *1 (holding that the trial court erred by ordering eighty days of additional possession when it only found that the relator was in contempt for denying possession of one weekend visitation).  We order the trial court to vacate the portion of the amended order of enforcement providing for sixty-two days of make-up possession and amend the order awarding additional possession consistent with section 157.168.  *See Ramberansingh*, 2013 WL

14

3871047, at *1 (instructing the trial court to vacate its order and render a new order awarding additional possession consistent with the statute).

**Award of Airline Costs**

Relator complains that the trial court awarded Father $300 in airline costs not associated with the January 17, 2014 visitation. Father testified that there was a cancellation fee of $150 fee for each ticket, or $300 total, that he was not able to recoup for the 2013 Christmas visitation. For the January 17, 2014 visitation, as addressed above, Father identified Exhibit 12 as an email to his attorneys in which he was forwarding airline ticket information showing the cost of the child's ticket was $288.50. Father told his attorneys: "I had to let this flight go as a no-show and United has not provided me with any compensation. This ticket cost 288.50 + 300 for the unaccompanied minor fee (that 300 was refunded)." Father testified that he "lost the full value of the ticket," which was $288.50. In sum, Father testified that he was out of pocket $588.50—$300 for the cancellation fee for the 2013 Christmas visitation and $288.50 for the no-show for the January 17, 2014 visitation.

The only violation the trial court found was for denial of possession for the January 17, 2014 visitation. There is no evidence that Father incurred unreimbursed out-of-pocket costs totaling $588.50 with respect to that visitation. Instead, the evidence shows that Father incurred $288.50 for cost of unused ticket, and that Father was only seeking that amount. Therefore, the trial court abused its discretion by awarding Father $300 beyond the $288.50. We order the trial court

to vacate the portion of the amended enforcement order directing relator to pay Father $588.50 in costs and amend the order to award Father $288.50 in costs.

## CONCLUSION

We conditionally grant the writ of mandamus in part and deny it in part. We order the trial court to vacate the portions of the February 27, 2015 amended order of enforcement through contempt, which (1) awarded Father sixty-two days of additional possession; (2) awarded Father $588.50 in airline costs; and (3) provided that the $4,500 attorney's fees award "may be enforced by means available for the enforcement of child support, including contempt, but not wage withholding." We order the trial court to amend the order to (1) award Father additional possession consistent with section 157.168; (2) award Father $288.50 in airline costs; and (3) provide that the $4,500 attorney's fees award is a debt. The writ will issue only if the trial court fails to act in accordance with this opinion. The stay this court issued on October 29, 2015, is lifted.

PER CURIAM

Panel consists of Justices Boyce, Busby, and Brown.