**Motion Denied; Affirmed and Memorandum Opinion filed November 26, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00126-CV

## IN THE INTEREST OF I.R.B., A CHILD

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 14-DCV-216657**

## MEMORANDUM  OPINION

Appellant Jennifer Braden ("Mother") appeals the trial court's order in this suit to modify the parent-child relationship. In twelve issues Mother argues the trial court abused its discretion in (1-2) failing to transfer venue; (3) failing to permit Mother to appear by telephone, audiovisual, or other electronic means; (4) denying Mother's "inconvenient forum" motion; (5) proceeding to trial without giving Mother notice of pretrial hearing dates; (6) appointing Hussain A. Rahim ("Father") as sole managing conservator; (7) permitting re-litigation of issues established in prior proceedings; (8) litigating issues raised in another proceeding; (9) failing to

take judicial notice of pending domestic violence proceedings in Kings County, New York; and (10-12) entering an order that was not supported by legally or factually sufficient evidence. Because the parties and children now reside in New York and Mother has affirmatively stated she does not want to return to the trial court in Fort Bend County, all of Mother's issues, which if sustained, would result in a remand have been waived. Accordingly, we consider only the rendition issues that attack the validity of the trial court's orders that may be enforced or modified in New York under the Uniform Interstate Family Support Act. We conclude we have jurisdiction over the appeal, the trial court had jurisdiction over the suit, venue was proper in the trial court, and legally sufficient evidence supports the trial court's order. We therefore affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2013, a Harris County trial court signed an order appointing the parties joint managing conservators of I.R.B. ("the child") and awarding Mother the exclusive right to designate the primary residence of the child in Texas and New York. *In re Braden*, 483 S.W.3d 659, 660 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding). Father has lived in New York the entire time this case has been pending.

On May 16, 2014, Father filed a motion for enforcement of possession or access and, alternatively, motion to modify. Father alleged that Mother failed to comply with the November 22, 2013 order by failing to deliver the child to the airport on January 17, 2014 for a four-day visitation in New York. Father requested that Mother be held in contempt and that he be awarded additional periods of possession to compensate for those periods in which Mother did not surrender the child. Father further sought modification of the November 22, 2013 order seeking appointment as the person who has the right to designate the child's primary

2

residence. On July 29, 2014, the instant case began when a Fort Bend County judge signed an agreed order transferring the suit affecting the parent-child relationship to Fort Bend County.

On November 13, 2014, Mother filed her "Original Answer, Response in Opposition, and Special Exceptions to Petitioner's Motion for Enforcement of Possession or Access, or in the Alternative, Motion to Modify." Mother asserted that she was not able to comply with the court's possession order because Father failed to purchase airline tickets for the child. On October 15, 2015, Father filed a motion to modify the parent-child relationship, asking that he be appointed the conservator with the right to designate the primary residence of the child.

On June 7, 2016, Mother filed a verified special appearance and plea to the jurisdiction, contesting the trial court's jurisdiction and requesting that the trial court dismiss Father's motion to modify or, in the alternative, transfer the case to "the appropriate venue." Mother argued, in part:

> While [Mother] routinely uses her mother's Stafford, Texas address as a permanent or mailing address for the protection of herself and the minor child subject to this suit, neither [Mother] nor the minor child subject to this suit are residents of Fort Bend County nor have they been in over one year's time. This change of residence has been repeatedly expressed to the Court verbally and in writing.
>
> *****
>
> Even were [Mother] properly served with legal notice of [Father's] Motion to Modify, which [Mother] asserts she has not been, under § 155.201(b) of the Texas Family Code, a mandatory transfer to the county of residence of the minor child would be appropriate. *Proffer v. Yates*, 734 S.W.2d 671 (Tex. 1987); *Arias v. Spector*, 623 S.W.2d 312 (Tex. 1981); *Brod v. Baker*, 591 S.W.2d 457 (Tex. 1979); *McManus v. Wilborn*, 932 S.W.2d 662 (Tex. App.—Houston [14th Dist.] 1996, mand. motion overruled).

Mother stated that the child had not resided in Fort Bend County for over a year but

did not specify to which county the trial court should transfer the case.

The trial court held a hearing on Mother's verified special appearance and plea to the jurisdiction on June 13, 2016. At the hearing, Mother argued that she was not served properly with the October 15, 2015 motion to modify. The trial court, reviewing the case file, observed that citation was issued on October 19, 2015 for Father's motion to modify the parent-child relationship and that Mother was properly served with the motion to modify on February 19, 2016. The trial court denied Mother's special appearance and plea to the jurisdiction.

The trial court instructed Mother that a "formal motion to transfer would be the avenue with which you would try to transfer this case[.]" Mother argued that her verified special appearance and plea to the jurisdiction constituted a motion to transfer venue. The trial court concluded, however, that Mother's verified special appearance and plea to the jurisdiction did not constitute a motion to transfer venue: "Nowhere in the verified special appearance or plea to the jurisdiction did I see where [Mother] requested a motion to transfer in accordance with the Texas Family Code." The trial court advised Mother that if she had "a different address and you can prove that," the court would consider a motion to transfer the case to Harris County. The trial court signed temporary orders directing Mother to deliver the child to Father at the Fort Bend County Sheriff's Department on June 15, 2016 for Father's extended summer visitation.

Mother failed to deliver the child to Father as ordered by the trial court. Father filed a motion for writ of attachment of the child on June 16, 2016, and the trial court held a hearing the same day. Father testified that Mother did not deliver the child to the Sheriff's Department on June 15, 2016, pursuant to the trial court's June 13, 2016 order. The trial court signed an order issuing a writ of attachment directing a sheriff or constable to take and deliver the child to Father. Mother did not attend the hearing.

4

On September 16, 2016, Mother filed a verified answer to Father's motion for enforcement of possession or access to the child. That same day, Mother filed a counter-motion for enforcement of child support, alleging that Father owed more than $10,000 in child support. Mother also filed a motion to transfer the case to Brazoria County, or alternatively Harris County. Mother alleged that, pursuant to section 155.201(b) of the Texas Family Code, venue was proper in Brazoria County because the child had resided there since at least July 2016. Mother also stated that the child had previously lived in Harris County since late fall 2014.

On September 22, 2016, Mother filed a "Motion to Transfer Case, Without Hearing, to Harris County Under § 155.201(b) of the Family Code." Mother claimed that neither she nor the child had been residents of Fort Bend County for over a year. Mother referred to her June 7, 2016 verified special appearance and plea to the jurisdiction, which requested that the trial court "immediately abate all proceedings in the above-styled cause, dismiss the Petitioner's motion to modify or, in the alternative, order the suit transferred to the appropriate venue." Mother requested that the trial court transfer the case without a hearing. Father responded to Mother's motion to transfer venue with a controverting affidavit. After a hearing the trial court denied Mother's motion to transfer venue to Harris County or Brazoria County.

Following over one year of hearings on temporary orders and multiple hearings on recusal motions, on January 3, 2018, the trial court held a pretrial hearing. In the meantime, Mother had also moved to New York. At the beginning of the pretrial hearing the trial court stated on the record that Mother was notified of the pretrial hearing on January 3, 2018 and was notified that the next jury setting was January 9, 2018.

The trial court proceeded to trial on January 9, 2018. At 9:50 a.m. on the date of trial the trial court noted that Mother requested a jury trial but was not present in

5

the courtroom. The day before trial began Mother participated by telephone in hearings on enforcement motions. The trial court asked the bailiff to step out into the hall and call Mother's name. The bailiff did so and reported that there was no response when he called Mother's name. Father and the amicus attorney announced ready and agreed to waive a jury trial. The trial court noted that Mother had sent an email the day before asking to appear at the jury trial by telephone. The trial court denied Mother's request. The trial court confirmed that in January 2017 Father was designated as the parent who could determine the residence of the child. At the time of trial the child lived in Kings County, New York and had lived there since the first week of February 2017. Before February 2017 the child had lived with Mother in Texas.

Father sought to modify the November 22, 2013 order from Harris County that named Mother as the parent who had the exclusive right to determine the child's residence and to receive child support. Father testified that the child was eleven years old and lived primarily with him in New York. The child attended school approximately 20 minutes from home and Father's parents lived nearby. Father testified there had been a material and substantial change in the circumstances since the entry of the November 22, 2013 order. Specifically, from November 22, 2013 until February 3, 2017, the date of a temporary order signed by the trial court, Father had not been allowed to exercise visitation with the child despite several attempts.

Father testified that he first attempted to exercise visitation rights for the holidays during 2013 but was told the child was too sick to fly. Father next attempted visitation in January 2014. Father purchased a plane ticket for the child, but Mother refused to allow the child to visit because the "ticket did not comply with the order." When Father asked for an explanation, Mother told him, "that's between you and your lawyer. Figure it out." During several other attempts at visitation Mother

6

refused to allow the child to visit and refused any accommodations. Mother also refused to allow the child to visit during Spring Break 2014. For summer visitation in 2014 Father offered to fly to Texas to pick up the child and accompany her back to New York. Mother refused to allow the child to travel in the summer because she had a swimming accident that resulted in near drowning. Father spoke with the child's doctors who informed Father that the child would fully recover and had no restrictions on air travel during the time of the planned visitation. Father did not suggest that if the child were unable to travel that she should travel to meet him; Father was willing to reschedule the visit if necessary. Father next tried to exercise visitation rights for the child's birthday weekend but was not allowed to see her.

In December 2014 while Father was in Texas for a hearing the trial court ordered Mother to allow Father to visit with the child after school that day. Father had dinner and attended a large arcade facility with the child in Texas that evening. Although that visit was to be unsupervised Mother remained in close contact with both Father and the child during the visit following them around the arcade facility. In February 2015 Father again came to Texas to attend a "Dad Day" event at the child's school. On the same trip to Texas Father sought a weekend visitation, which the court authorized. When Father went to the home where the child was to be picked up, Mother did not allow the child to visit Father. Father was again not allowed a visit with the child at Spring Break or in the summer 2015.

Mother accused Father of sexual abuse both in Texas and New York. Father testified that Mother's allegations were unfounded and that she taunted Father with her allegations. In December 2015 an enforcement hearing was held in Texas at which Mother was held in contempt. Father's Spring Break 2016 visitation was also denied by Mother. In anticipation of further obstruction for the summer 2016 visitation Father sought court approval of the pick-up and drop-off location. The trial

court ordered the child to be released to Father at the Fort Bend County Sheriff's office. Father waited at the Sheriff's office for over one hour, the amicus attorney attempted to contact Mother, but Mother never appeared with the child. Following a hearing on temporary orders in September 2016 Father was permitted visitation with the child. Father testified that the child was engaged with him and warmed up to him when she was away from Mother's influence.

Father's next visitation was scheduled for November 21, 2016 at 7:00 p.m. At 7:28 p.m. Mother informed Father that the child would not be visiting him because the child had a headache after school and Mother's car would not start. The next morning, November 22, 2016, Mother filed a petition for writ of mandamus in this court in which she challenged several orders of the trial court on the ground that the court did not have jurisdiction over the modification action. Mother complained, among other matters, of the trial court's failure to grant her motion to transfer venue to Brazoria or Harris County. This court, finding Mother was not entitled to mandamus relief, denied her petition for writ of mandamus. *In re Braden*, No. 14-16-00940-CV, 2017 WL 124506, at *1 (Tex. App.—Houston [14th Dist.] Jan. 12, 2017, orig. proceeding).

On February 3, 2017, the trial court signed temporary orders in which the trial court found that the parents would continue as joint managing conservators of the child with Father being the only parent permitted to determine the child's residence. The trial court ordered that the child's primary residence would be Harris, Fort Bend, and Brazoria Counties in Texas and Brooklyn or New York City in New York. Mother was restricted from picking up or removing the child from school. Mother was further ordered to pay monthly child support. Despite the trial court's orders Mother called the New York school in which the child was to be enrolled and falsely informed them that Father did not have legal access to the child. Mother presented

the 2013 Harris County order to the New York school and told the school that Father had absconded with the child to New York.

In February 2017, after the trial court named Father as the parent who could designated the child's residence, Mother went to New York to find the child. Father and the child were at the movies and Mother was not able to find them at Father's address or his parent's address. Mother tried to force her way into Father's parent's home pushing and attacking Father's father. Father's parents reported the attack to the police who arrested Mother and charged her with trespass and harassment. After that incident Father obtained a protective order prohibiting Mother from contact with Father's father. Mother sought a protective order against Father in the New York courts but the request was denied.

Mother made at least three false reports to the New York Administration of Children's Services ("ACS"). Representatives from ACS went to the child's school and home and interviewed Father and his parents. Each of the cases were dismissed by ACS. Father also had to answer to a Department of Justice inquiry into whether he had attempted to leave the country with the child due to a false report by Mother.

Since the child has lived with Father in New York there has been a significant change in Father's relationship with the child. She met her extended family members and was doing well in school including extracurricular activities. Father has taken the child to see a counselor on a weekly basis. The child has benefited by the counseling sessions. Father cooperated with Mother during Mother's visitation times.

After hearing Father's evidence and testimony about attorney's fees the trial court signed an order in which it found:

- Mother was a resident of Fort Bend County at the time the modification suit was filed and the case was appropriately

transferred from Harris County;

- Mother engaged in active litigation from August 8, 2014 submitting herself to the jurisdiction of Fort Bend County, Texas until she filed a plea to jurisdiction on June 7, 2016 and a motion to transfer venue on September 16, 2016;

- Mother's plea to the jurisdiction and motion to transfer venue were denied as untimely;

- Further delay was not in the best interest of the child;

- There was a material change in circumstances since the November 22, 2013 order and the requested modification was in the best interest of the child;

- Mother and Father were to remain joint managing conservators of the child;

- Father was the parent, among other things, with the right to designate the primary residence of the child within Kings County, New York or Fort Bend County, Texas and any counties contiguous thereto; and

- Because Mother, among other things, was a "credible risk for fleeing with the child," Mother's "sole and only access" to the child was on the first and/or third Saturday and following Sunday and was to be supervised.

The trial court ordered that the parents remain joint managing conservators of the child with Father as the parent designated to determine the child's primary residence. Despite Mother's claims to the contrary, Father was not named sole managing conservator of the child. Mother timely appealed the trial court's order.

## JURISDICTION

After Mother filed her brief on appeal Father filed a motion to dismiss for lack of jurisdiction. In his motion Father alleged that Mother's appeal of the trial court's order is moot because the trial court's order was registered in Kings County, New York, and the New York court has entered orders involving the parties. Father argues, therefore, that because no live controversy remains between the parties, this

appeal should be dismissed as moot. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004); *Robinson v. Alief I.S.D.*, 298 S.W.3d 321, 330 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy.").

Father argues that Mother raises twelve issues in her appeal related to the trial court's "handling of matters involving custody, possession and access, and child support." Given that the New York court has accepted jurisdiction over the parties and child, Father argues Mother's appeal is moot.

Mother responded to Father's motion arguing that the New York court "has long been the court of proper jurisdiction," and it is the impropriety of the Fort Bend County court's order that is the subject of her appeal. Mother avers in her response that she "does not seek to have the issues remanded to Fort Bend County . . . but has instead sought for this Court to vacate, void, affirm as void or, where appropriate, reverse the Fort Bend County court's orders."

The Uniform Interstate Family Support Act ("UIFSA") is a uniform law, adopted by all United States jurisdictions, governing procedures nationwide for establishing, enforcing, and modifying child support and enforcement orders. *Kendall v. Kendall*, 340 S.W.3d 483, 495 (Tex. App.—Houston [1st Dist.] 2011, no pet.). According to the New York codification of the UIFSA, "[a] registered support order issued in another state or a foreign country is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state." N.Y. Fam. Ct. Act § 580-603. Therefore, under the UIFSA the Fort Bend County order can be enforced in New York if it is determined to be a valid order. *Id.*

Because the Fort Bend County order can be enforced in New York, Mother's appeal is not moot. We therefore deny appellee's motion to dismiss. Mother's appeal, however, is limited to those issues that would require reversal and rendition

11

of the Fort Bend County order. Those issues, raised in Mother's first, second, tenth, eleventh, and twelfth issues, include whether (1) the trial court had jurisdiction to act, (2) venue was proper in Fort Bend County, and (3) the trial court's order is supported by legally sufficient evidence. We need not address Mother's remaining issues because resolution of those issues, if sustained, would result in remand to the trial court.

**ANALYSIS**

## I.    Standards of Review

An order regarding the parent-child relationship will not be overturned unless the trial court clearly abused its discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (reviewing an enforcement order under an abuse-of-discretion standard). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford*, 801 S.W.2d at 109; *Evans v. Evans*, 14 S.W.3d 343, 345–46 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). However, a trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Conversely, when there is a determination of subject matter jurisdiction—a question of law—we apply a de novo standard of review. *In re T.L.*, 316 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

12

**II.    The Texas trial court had jurisdiction over the parties.**

In her second issue Mother argues the trial court erred in denying her "Verified Special Appearance, Plea to the Jurisdiction and Second Request for Fort Bend County, Texas to Relinquish Jurisdiction to a County in the State of New York." Mother argues that Father had always lived in New York, by February 2017 the child lived in New York, and by April 2017 Mother lived in New York. Mother argues that since no party lived in Texas at the time of trial, the Fort Bend County District Court did not have jurisdiction over the suit affecting the parent-child relationship.

Effective September 1, 1999, Texas adopted the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). The UCCJEA was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters. *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004). The UCCJEA provides the exclusive basis for a Texas court to exercise jurisdiction over a child-custody determination. *See* Tex. Fam. Code Ann. § 152.201(b); *In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012) (orig. proceeding).

The first substantive question in a child custody dispute in which multiple states are involved is whether the Texas trial court has jurisdiction over the case under Family Code section 152.201. *In re Salminen*, 492 S.W.3d 31, 39 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). Family Code section 152.201, governing "Initial Child Custody Jurisdiction" in a suit subject to the UCCJEA, provides that the trial court has jurisdiction to make an initial child custody determination only if one of four circumstances exists. Tex. Fam. Code Ann. § 152.201. Applicable here, section 152.201(a)(1) provides:

> [T]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child

within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

Tex. Fam. Code Ann. § 152.201(a)(1).

A child's "[h]ome state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7) (internal quotations omitted). A "[c]hild custody proceeding" is "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." *Id.* § 152.102(4) (internal quotations omitted). A proceeding commences on the filing of the first pleading. *Id.* § 152.102(5). *See generally In re Butterfield*, No. 01-18-00903-CV, 2019 WL 2127613, at *6 (Tex. App.—Houston [1st Dist.] May 16, 2019, orig. proceeding) (mem. op.).

Under the UCCJEA this proceeding is considered a child custody proceeding because visitation and physical custody were at issue, and the child's home state is the state in which the child lived with a parent for at least six consecutive months immediately before commencement of the proceeding.

"[T]he operative date for determining whether Texas has jurisdiction is the date the suit was filed in Texas." *In re Butterfield*, 2019 WL 2127613, at *6 (*quoting In re Walker*, 428 S.W.3d 212, 215 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding)). In this case, the operative date is May 16, 2014, the date on which Father filed a motion for enforcement of possession or access and, alternatively, motion to modify. *See In re Braden*, 483 S.W.3d 659, 661 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding). It is undisputed that Mother and the child lived in Texas on May 16, 2014 and lived in Texas for at least six consecutive months immediately before the commencement of the modification. Texas, therefore, was the child's home state. *See* Tex. Fam. Code Ann. § 152.201(a)(1). Under the

14

UCCJEA, a Texas court may decide child custody matters if Texas is the child's "home state"—that is, the state in which the child has lived with a parent for the past six months—on the date of the commencement of the child custody proceeding. *In re Salminen*, 492 S.W.3d at 39. Because Texas was the child's home state, the trial court properly exercised jurisdiction over the parties. We overrule Mother's second issue.

## III. Venue was proper in Fort Bend County, Texas.

In her first issue Mother argues that the trial court's orders are void or voidable "due to its repeated failure to transfer venue to the county in Texas where the child had resided for six months or more[.]" On September 22, 2016, Mother filed a "Motion to Transfer Case, Without Hearing, to Harris County Under § 155.201(b) of the Family Code" claiming that neither she nor the child had been residents of Fort Bend County for over a year. Mother sought transfer of venue to either Harris or Brazoria County in Texas.

Father filed a response to the motion to transfer venue in which he argued that Mother had waived her venue challenge by failing to file a timely motion to transfer venue, Mother's choice of county was not a mandatory county for venue, and Mother had not resided in the county, to which she had requested venue change, for six months. Father's controverting affidavit stated:

> The venue is proper in that I believe [Mother] continues to reside in Fort Bend County and merely gives different residences in an attempt to thwart Court proceedings. Still further [Mother] has failed to timely request a transfer of venue. This case has a long history and most of the testimony, actions and claims relevant to this matter have been heard by this Court. Transfer to another county would cause a significant increase in legal fees and result in Judicial and economic waste.

On October 10, 2016, the trial court held a hearing on Mother's motions to transfer venue. At the hearing Mother confirmed that her motion to transfer venue

15

was filed in response to Father's motion to modify, which was filed October 15, 2015. Mother claimed she had not lived in Fort Bend County for at least one and a half years. The trial court again noted that Mother was served with Father's motion to modify on February 19, 2016. The trial court denied Mother's motion to transfer venue as untimely.

Initially, we note that Mother challenged the trial court's denial of her motion to transfer venue in a petition for writ of mandamus filed in this court on November 22, 2016. *See In re Braden*, No. 14-16-00940-CV, 2017 WL 124506, at *1 (Tex. App.—Houston [14th Dist.] Jan. 12, 2017, orig. proceeding) (mem. op.). This court held that Mother had not established entitlement to mandamus relief and denied her petition for writ of mandamus. *Id.*

As mandamus is a discretionary writ, its denial, without comment on the merits, cannot deprive an appellate court from considering the matter in a subsequent appeal. *Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008). This court's per curiam memorandum opinion denied Mother's writ of mandamus stating that we examined and considered the petition and that we determined that relator had not shown herself entitled to the relief sought. *In re Braden*, 2017 WL 124506, at *1. The opinion did not address the issues raised in the original proceeding, discuss the arguments of the parties, or explain the applicable law. *See* Tex. R. App. P. 52.8(d) (providing that a court is not required to hand down an opinion when denying relief). Our mandamus opinion did not address the merits of the issues in this appeal and is not dispositive here.

The transfer procedures in the Family Code governing suits affecting the parent-child relationship are the exclusive mechanism for transferring the case or challenging venue and were designed to supplant the regular rules dealing with transfer of venue applicable in ordinary civil cases. *See Leonard v. Paxson*, 654

16

S.W.2d 440, 441 (Tex. 1983) (interpreting the predecessor transfer statutes of the Family Code); *see also In re Leder*, 263 S.W.3d 283, 286 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding) (Family Code's transfer procedures are the exclusive mechanisms for challenging venue and for transferring the case in a suit affecting the parent-child relationship). An untimely motion to transfer gives a trial court no authority to transfer a cause to another court. *See Alexander v. Russell*, 699 S.W.2d 209, 210 (Tex. 1985) (holding that failure to follow the predecessor transfer statute's procedure was error and that the trial judge had no authority to transfer the cause).

Section 155.201(b) of the Family Code provides for the mandatory transfer of venue for a modification case upon the timely motion of a party. *See* Tex. Fam. Code Ann. § 155.201(b) ("If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court shall . . . transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer."). With certain exceptions not applicable to the present case, section 155.204(b) of the Family Code provides that:

> [A] motion to transfer by a petitioner or movant is timely if it is made at the time the initial pleadings are filed. A motion to transfer by another party is timely if it is made on or before the first Monday after the 20th day after the date of service of citation or notice of the suit or before commencement of the hearing, whichever is sooner.

Tex. Fam. Code Ann. § 155.204(b).

The timeliness of a motion to transfer venue depends upon whether the movant is a "petitioner" or "other party." *In re Thompson*, 434 S.W.3d 624, 629 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). In this case Father is the petitioner and Mother is the other party. The trial court found that Mother was served with Father's motion to modify on February 19, 2016. Therefore, as an "other party"

17

Mother's motion to transfer venue was timely if filed on or before March 14, 2016 (the first Monday after the 20th day after the date of service). Mother filed her first motion to transfer venue on September 16, 2016, six months after the deadline.

Because Mother's motion to transfer was untimely, transfer of the case was not mandatory, and the trial court was within its discretion to deny the motion. *See* Tex. Fam. Code Ann. § 155.204(b). We overrule Mother's first issue.

## IV.    The trial court did not abuse its discretion in issuing the order regarding the parent-child relationship.

In her tenth, eleventh, and twelfth issues Mother argues the trial court abused its discretion by entering findings that lacked legally and factually sufficient evidence. As noted above, a trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *In re C.A.M.M.*, 243 S.W.3d at 214.

To determine if the evidence is legally sufficient, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005). After assessing the sufficiency of the evidence, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *See In re C.A.M.M.*, 243 S.W.3d at 221. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Id.*

In this case, the trial court did not err in modifying conservatorship if modification was in the child's best interest and if there had been a material and substantial change in circumstances. *See* Tex. Fam. Code Ann. § 156.101(1).

In determining the best interest of a child, a court may consider, inter alia: (1) her desires, (2) her emotional and physical needs now and in the future, (3) any

18

emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking primary possession, (5) the programs available to assist these individuals to promote the child's best interest, (6) the plans for the child by those seeking primary possession, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). In the specific context of modification of conservatorship, courts also consider (10) the child's need for stability; and (11) the need to prevent constant litigation regarding conservatorship of the child. *In re C.A.M.M.*, 243 S.W.3d at 221.

In this case, the record reflects a long history of Mother's use of her relationship with the child to cause disruption in Father's life. Father testified to a number of times in which he purchased plane tickets for the child and himself to facilitate court-ordered visitation and periods of possession. For at least two years Mother refused to allow Father to have access to his daughter. Father's only periods of possession and visitation from August 2014 through February 2017 occurred on the court's order when Father traveled to Texas for court hearings. Mother made false claims about the child's health to prevent her from visiting Father. Mother made false accusations about Father to the New York child protection agency and the United States Department of Justice. Mother harassed Father and his family to the degree that they called law enforcement to intervene. Mother attempted to interfere with Father enrolling the child in school despite trial court orders to the contrary.

In contrast after February 2017 the child was doing well in school and participating in extracurricular activities. She was receiving weekly therapy and benefitted from the counseling sessions. The child met her extended family members

and was bonding with them. Father cooperated with Mother during Mother's visitation times.

In challenging the legal sufficiency of the evidence Mother argues (1) several fact issues should have been precluded from retrial by res judicata or collateral estoppel; (2) findings of parental alienation were not supported by the evidence; and (3) abduction findings were made in the absence of pleadings.

Mother first argues that several fact issues were previously heard and disposed in July 2016 after an enforcement hearing. For that reason, Mother argues those issues were improperly raised in the trial of the modification petition. The order Mother references was an order holding Mother in contempt signed July 7, 2016. The contempt order was signed in response to Father's motion for enforcement filed May 16, 2014. *See In re Braden*, 483 S.W.3d 659, 661 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding).

Because res judicata and collateral estoppel are affirmative defenses, the party asserting them has the burden of pleading and proving the elements of the asserted defense. *Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). We find no pleading in which Mother asserted these affirmative defenses nor was there proof at trial of the elements of res judicata or collateral estoppel.

Mother further argues that the trial court improperly made findings of parental alienation. Mother does not cite to any portion of the trial court's order that contains a finding of parental alienation nor have we found such a finding in our review of the order.

Finally, Mother argues that the trial court made "abduction findings" in the absence of pleadings. The trial court permanently enjoined Mother from:

- Discussing any aspect of this case with the child or within the hearing distance of the child;

- Making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of the child;

- Disrupting or attempting to thwart efforts of Father to successfully withdraw/enroll the child from any school which she is presently enrolled or will be enrolled;

- Making application for a passport/replacement passport for the child;

- Harassing, following or stalking Father or the child; and

- Going to the school except as specified above, supervised with one of the supervisory programs listed.

Mother argues the trial court made these findings without proper consideration of the "abduction risk factors" listed in section 153.502 of the Family Code.

The Texas Legislature enacted a series of statutes aimed at international parental child abduction in May 2003. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 612, § 1, 2003 Tex. Gen. Laws 2002, 2002–04 (codified as Tex. Fam. Code Ann. §§ 153.501–.503). *See In re Sigmar*, 270 S.W.3d 289, 296 (Tex. App.—Waco 2008, no pet.). Family Code section 151.503 permits a trial court to impose abduction prevention measures such as supervised visitation and passport controls if the court finds it necessary because "credible evidence" has been presented which indicates a "potential risk" of international abduction. Tex. Fam. Code Ann. § 153.503. Imposition of such prevention measures requires the court to consider certain abduction risk factors found in section 153.502 of the Family Code.

We hold Mother's argument is not supported by the record. Other than the injunction against applying for a passport or replacement passport, the trial court's order does not appear to be based on a potential risk of international abduction. The trial court's order was directed toward Mother's obstructive action in making false

21

claims to the child's school and harassing Father's family.

On this record, we cannot conclude that the trial court had insufficient evidence upon which to exercise its discretion or erred in its application of this discretion. To the contrary, the record supports the trial court's determination that there was a material change in circumstances and the modification is in the child's best interest. Accordingly, we overrule Mother's tenth, eleventh, and twelfth issues.

## CONCLUSION

Having overruled all of Mother's issues that would result in reversal and rendition of the order, we affirm the trial court's order of modification.


/s/    Jerry Zimmerer
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.